899 So.2d 107 (2005)
Arthur SCHEXNAYDER, Jr., Alice Labat, Estate of Theodore Dreyfus, Inc.
v.
ENTERGY LOUISIANA, INC., Entergy Services, Inc., Entergy Technology Holding Company and Entergy Technology Company.
No. 04-CA-636.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
Rehearing Denied May 4, 2005.
*110 Victor L. Marcello, Donald T. Carmouche, Talbot, Carmouche, & Marcello, Gonzales, LA, Brian A. Eddington, Baton Rouge, LA, Michael R. Mangham, Stacy N. Kennedy, Donald J. Ethridge, Mangham & Associates, Lafayette, LA, for Plaintiff/Appellee.
Ewell E. Eagan, Jr., Martin E. Landrieu, Wendy Hickok Robinson, Gordon, Arata, McCollam, Duplantis & Eagan, Marcus V. Brown, Entergy Legal Services, New Orleans, LA, Vincent J. Sotile, Jr., Sotile Law Firm, Prairieville, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The defendants, Louisiana, Inc., Entergy Services, Inc., Entergy Technology Holding Company and Entergy Technology Company[1], appeal from the trial court's decision granting the Motion For Class Certification filed by plaintiffs, Arthur Schexnayder, Jr., Alice Labat, and the Estate of Theodore Dreyfus, Inc., and appointing them as representatives of the class. For the following reasons, we affirm the decision of the trial court.
*111 Entergy provides domestic retail electric utility service in Texas, Arkansas, Louisiana and Mississippi. In the 1990's, Entergy began installing a fiber optic cable network through several states, including Louisiana, within previously acquired servitudes, to meet its communication needs over the next several decades. Plaintiffs allege that defendant marketed its surplus to various communications entities.
On April 4, 2003, the plaintiffs, all Louisiana residents, filed suit against the defendants alleging that defendants committed a knowing and intentionally bad faith civil trespass by unlawfully physically invading their lands and those of the class members without their knowledge and permission, and failed to compensate them for the unauthorized and unlawful use of their land. The plaintiffs also alleged that the defendants concealed the existence of the fiber optic cable and its uses other than the transmission of electricity and/or internal communications, which includes leasing, selling, and otherwise allowing third parties to use excess fiber optic capacity on the network. The plaintiff sought damages for the physical damage to the property involved, lost profits, loss of revenue and use of the property, and all other damages to which they were entitled under Louisiana law.
Thereafter, on May 12, 2003, the plaintiffs filed a Motion for Class Certification, alleging that all five prerequisites for certification under LSA-C.C.P. art. 591(A) were satisfied, and that they were entitled to certification pursuant to LSA-C.C.P. art. 591(B)(1)(2) and (3). Plaintiffs proposed three class representatives: Arthur Schexnayder, Jr., a resident of St. James Parish; his sister, Alice Labat, a resident of Ascension Parish[2]; and the Estate of Theodore Dreyfus, Inc., a Louisiana Corporation with its principal place of business in Pointe Coupee Parish[3].
The trial court granted the plaintiffs' motion and appointed Arthur Schexnayder, Jr., Alice Labat, and the Estate of Theodore Dreyfus, Inc., as the class representatives. The court certified the following class under LSA-C.C.P. art. 591(B)(1)(2) and (3):
All persons and entities who own, or have owned, land in Louisiana upon which defendants have strung or installed fiber optic cable that defendants have leased, sold, or provided to other persons or entities, or otherwise used (or that the defendants may lease, sell, provide to other persons or entities, or otherwise use in the future) for purposes other than the transmission of electricity and/or defendants' internal communications. Excluded from this Class are the defendants (and their officers, directors, and employees), and any entity in which the defendants (and their officers, directors, and employees) have a controlling interest. Also excluded from the Class are all agencies and subdivisions of the United States and any State, Parish, or local government or municipality or political subdivision thereof ...
The trial court found that the plaintiffs had satisfied each of the five prerequisites for certification under LSA-C.C.P. art. 591(A), that certification was appropriate pursuant to LSA-C.C.P. art. 591(B)(1) and (2), and that the case met the requirements *112 of superiority and predominance under LSA-C.C.P. art. 591(B)(3).
Entergy appeals from the decision of the trial court.

ANALYSIS
LSA-C.C.P. art. 591 governs class action certification, as follows:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on *113 proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
In Daniels v. Witco, 03-1478 (La. App. 5 Cir. 6/1/04), 877 So.2d 1011, this Court outlined the requirements for class certification and explained the purpose and intent of a class action procedure:
Under Louisiana law, in order to meet class certification requirements, plaintiffs must meet all of the requirements of La. C.C.P. art. 591(A) and fall within one of the subsections of 591(B). Defraites v. State Farm Mut. Auto. Ins. Co., 03-1081 (La.App. 5th Cir. 1/27/04), 864 So.2d 254. The burden of establishing that the statutory criteria are met falls on the party seeking to maintain the class action. Cooper v. City of New Orleans, 01-115 (La.App. 4th Cir.2/14/01), 780 So.2d 1158, writ denied, 01-720 (La.5/11/01), 792 So.2d 734; Billieson v. City of New Orleans, 98-1232 (La.App. 4th Cir.3/3/99), 729 So.2d 146, 154, writ denied, 99-946 (La.10/29/99), 749 So.2d 644 and writ denied, 99-960 (La.10/29/99), 749 So.2d 645. A trial court has wide discretion in deciding whether to certify a class and the decision will not be overturned absent a finding of manifest error or abuse of discretion. Defraites, supra; Adams v. CSX Railroads, 92-1077 (La.App. 4th Cir.2/26/93), 615 So.2d 476. However, any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is subject to modification, if later developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984); Johnson v. E.I. Dupont deNemours and Co., 98-229 (La.App. 5th Cir.10/14/98), 721 So.2d 41.
The purpose and intent of a class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise their option of exclusion. Defraites, supra; Doer v. Mobil Oil Corp., 01-775 (La.App., 4th Cir., 2/27/02), 811 So.2d 1135, 1141, writ denied, 02-920 (La.5/31/02), 817 So.2d 105 and writ denied, 02-938 (La.5/31/02), 817 So.2d 106. The interests of justice are not served by the needless time consuming repetition of evidence and litigation of issues in individual trials on a one-by-one basis which are common to the claims of all affected. 5 Newberg on Class Actions, § 17:1 at p. 298 (4th ed.2002).
Daniels v. Witco Corp., 877 So.2d at 1014.
In our review of the trial court's ruling, we do not review whether the plaintiff will ultimately prevail on the merits, nor can we review plaintiff's claims on their substantive merit. Rather, our task is to determine whether the certification of this action as a class is appropriate in light of established Louisiana criteria. We can examine the substantive legal claim to determine whether certification of this matter as a class action is appropriate. Defraites v. State Farm, 03-1081 (La.App. 5 Cir. 1/27/04), 864 So.2d 254, 259-260.
The trial court is afforded great discretion in class action certification and, unless it has committed manifest error, we must affirm its decision. Clement v. Occidental Chemical Corp., 97-246 (La. App. 5 Cir. 9/17/97), 699 So.2d 1110, 1114.
*114 In its first allegation of error, Entergy alleges that class certification is inappropriate because the plaintiffs are not adequate class representatives. Entergy argues that the trial court erred in concluding that the plaintiffs satisfied the typicality and adequacy requirements of LSA-C.C.P. art. 591(A)(3) and (4).
Plaintiffs, in the motion for class certification, presented the following to support their contention they met the typicality and adequacy requirements of LSA-C.C.P. art. 591(A). The owners of the property potentially affected by this litigation were in the thousands. There are 1,766 servitudes that fall into four categories: (1) transmission of electricity and grantees' communications; (2) transmission of electricity; (3) transmission of electricity and communications, and; (4) transmission of electricity and for telephone and telegraph use. Such a large class number made joinder impractical, satisfying the numerosity requirement of LSA-C.C.P. art. 591(A)(1). Eighty-two percent of the servitudes at issue contained granting language similar to the granting language of the proposed class representatives, satisfying the commonality requirement of LSA-C.C.P. art. 591(A)(2).[4] The claims of class representatives Schexnayder and Labat are typical of claims for the landowners of 1,051 of the 1,766 parcels of land in question, satisfying LSA-C.C.P. art. 591(A)(3). In addition, there are no antagonistic claims and the class representatives possessed a sufficient amount of property to insure vigorous advocacy of their and the putative class members' claims, LSA-C.C.P. art. 591(A)(4). The proposed class is objectively identifiable as landowners from the public records. LSA-C.C.P. art. 591(A)(5).
In Duhe v. Texaco, Inc., 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1079, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637, the court set forth the elements needed to prove the issues of typicality and adequacy:
Typicality, Article 591(A)(3), means that "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class." This element, simply stated another way, requires that the claims of the class representatives be a cross-section, or typical of, the claims of all class members. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, writ denied, 97-0800, 97-0830 (La.4/8/97), 693 So.2d 147. "Rule 23(a)(3) [the federal counterpart] assures that the claims of the representative party are similar enough to the claims of the class so that he will adequately represent them." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER and MARY KAY KANE, supra, § 1764, at 232-3. The test for typicality, like commonality, is not demanding. Shipes v. Trinity Industries, 987 F.2d 311 (5 Cir.1993), cert. denied, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993). It satisfies typicality if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory. Feinberg v. Hibernia Corp., 90-4245, 1992 WL 176119, at *5 (E.D.La.1992).
* * *

*115 The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718 (11 Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988). Some of the named Plaintiffs before us are less formally educated than others. In federal law, it is not required that the named Plaintiffs understand all of the legal intricacies of the suit in order to adequately represent the class. Gibbs Properties Corp. v. CIGNA Corporation, 196 F.R.D. 430 (M.D.Fla.2000). The test often used for adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to insure vigorous advocacy; and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Davis v. Cash For Payday, Inc., 193 F.R.D. 518 (N.D.Ill.2000)
The trial court, in its reasons for judgment, found that the plaintiffs' claims arose out of the same course of conduct as the other class members' claims and were based on the same legal theories. Furthermore, the language in the servitudes of the representative plaintiffs fell into two of the four categories, which covered eighty percent of the properties in the case. The trial court also found that the proposed class representatives were adequate representatives, because there were no conflicts between the representatives and the other class members, and they possessed a sufficient amount of property to insure vigorous advocacy of the claims. As the court noted, the defendants did not contend that that plaintiffs' counsel was unqualified to represent the class in this action. We agree with the trial court.
In this case, the plaintiffs, all Louisiana residents, filed suit seeking damages for Entergy's knowing and intentional bad faith civil trespass, and failure to compensate them for the unauthorized and unlawful use of their land. The proposed representatives and class members allege that Entergy committed a civil trespass installing, without their permission, the fiber optic cable network used for other than the transmission of electricity and/or internal communications within previously acquired servitudes in Louisiana, then concealed its existence. That is, Entergy was a trespasser, going upon their property without their consent and committing an unlawful physical invasion of their property. Griffin v. Abshire, 04-0037 (La. App 3 Cir. 6/2/04), 878 So.2d 750, writ denied 04-1663 (La.10/8/04), 883 So.2d 1018; Pepper v. Triplet, 03-0619 (La.1/21/04), 864 So.2d 181, 197. Therefore, all of the proposed representatives' claims arose out of the same course of conduct as the other class members' claims and are based on the same legal theories. In addition, the proposed class representatives are adequate representatives, because there were no conflicts between the representatives and the other class members, and they possess a sufficient amount of property to insure vigorous advocacy of the claims.
In this allegation of error, defendants argue that the claims of Schexnayder and Labat should be dismissed, because their servitudes allowed Entergy's predecessor, Louisiana Power & Light, to use the right of way to transfer electricity and communications, which would include the installation and use of fiber optics for communications, not limited to internal use. Therefore, they are not typical and adequate class representatives. The defendants cite Corley v. Entergy Corp., 246 F.Supp.2d 565 (E.D.Tex. 2003), a recent decision in which a Texas Court found that *116 language in an easement that allowed for the transmission of electricity and communications gave Entergy Gulf States, Inc., the right to "install and utilize fiber optic lines for the purpose of transmitting voice, data and video for both internal and third party communications." Corley v. Entergy Corp., 246 F.Supp.2d at 579. However, this argument goes to the merits of the case, and therefore, is not appropriate in this review of a trial court's grant of class certification. We are neither obligated nor are we persuaded to follow the findings of Corley, supra.
Second, the defendants argue that the claims of Estate of Theodore Dreyfus, Inc. lack typicality and adequacy, because the servitude was granted to Gulf States Utilities Company ("GSU"), the predecessor to Entergy Gulf States, Inc. ("EGSI"), who is not a party in this litigation. The defendants claim that GSU installed the fiber optic cables on the Dreyfus property, and EGSI, owns two hundred and thirty-five miles of fiber optic cable with excess capacity, which is marketed to third parties by Entergy Technology Holding Company and Entergy Technology Company. The defendants claim that any court awarded damages and/or injunctive or declaratory relief against EGSI would be a violation of due process.
The plaintiffs respond that they have not yet made EGSI a defendant, but imply that they intend to do so. Nevertheless, they argue that while EGSI owns the fiber optic cable, it is Entergy Technology Company that sells the excess capacity on them to third parties, which make it liable in solido with EGSI for bad faith trespass.[5] Finally, the plaintiffs' claim that a Motion for Class Certification is an inappropriate vehicle for determining the merits of whether ETC is liable to the plaintiffs by itself or in solido with EGSI. However, it is Entergy Technology Company who sells to third parties the excess capacity on the EGSI cables, and therefore maybe liable in solido with EGSI for bad faith trespass after a trial on the merits.
We find defendant's first allegation of error to be without merit.
In their second Assignment of Error, the defendants argue that the plaintiffs' claims do not meet the requirements for certification under LSA-C.C.P. art. 591(B)(1) and (2). Defendants first argue that plaintiffs have not proven that they would be faced with inconsistent results or that other class members could not protect their interests, if the plaintiffs filed individual claims. LSA-C.C.P. art. 591(B)(1). Second, the defendants argue that since the plaintiffs are seeking primarily monetary relief, if individual suits were filed, at most, they would have to pay some of the plaintiffs' different damage awards and some no damages at all. The payment of damages would not force them to comply with inconsistent adjudications, thereby forcing them to violate one court order in order to abide by another, which is the purpose of LSA-C.C.P. art. 591(B)(2).
The plaintiffs respond that the injunctive and declaratory relief they seek could impair Entergy's rights to pursue uniform conduct in transmitting communications, in a linear continuum over some properties and not others, if it was faced with individually conflicting multiple judgments. They also claim that adjudication on the merits of the representative plaintiffs' claims would be dispositive of the interests of the other class members.
*117 The trial court in its reasons for judgment found that certification was appropriate pursuant to LSA-C.C.P. art. 591(B)(1) and(2), because if the plaintiffs' claims were proven true, the final injunctive and declaratory relief would be applicable to the whole class, and that individual actions would lead to inconsistent results and incompatible standards of conduct for the defendants and impede the interests of those not members of the class.
We find no error in the trial court's ruling. The plaintiffs are all Louisiana residents who have raised claims arising out of the same course of conduct as the other proposed class members' claims. These claims are all based on the same legal theories. If the plaintiffs are successful in receiving the injunctive and declaratory relief concerning the use of the servitudes that they seek at a trial on the merits, it will affect the interests of those landowners that are not party to this litigation. In addition, if actions were to be brought by individual members of the proposed class, inconsistent adjudications could force the defendants to engage in incompatible standards of conduct relating to the servitudes. We find this assignment of error to be without merit.
In their third allegation of error, defendants argue that the plaintiffs have not proven that common issues will predominate and therefore they do not satisfy the requirements of LSA-C.C.P. art. 491(B)(3). In the motion for class certification, plaintiffs had argued that there were no substantial interests in individual control and there was a predominance of common issues in the litigation.
Defendants argue that common issues do not predominate, because of individual issues to be decided on the merits, i.e. damages due each plaintiff. The defendants contend that in order to prove their allegation of fraud involving the concealment of the fiber optic network and its uses, the plaintiffs will have to prove that they each in turn relied on Entergy's concealment or misrepresentations involving the fiber optic network. The defendants contend that instead of a civil trespass, this is a case of inverse condemnation, because they possess the power to expropriate the property pursuant to La. R.S. § 19(6) and (7) and La. R.S. § 45:781. Therefore, some plaintiffs will be limited only to receive just compensation, while the other plaintiffs will be unable to contest the installation of the fiber optic cables across their property, because of the two year prescriptive period, which began to run on the date their property was actually occupied and used for the purposes of expropriation. The defendants assert that different prescriptive periods may be applicable in this case, based on the proper classification of the plaintiffs' cause of action and the relevant prescriptive periods, civil trespass or inverse condemnation, whether their property was damaged in pursuit of a public purpose, when the cables were installed on their property and when they had knowledge of the installation. Finally, the defendants contend that the necessity of individual damages assessments for each plaintiff precludes a finding of a predominance of common issues.
The plaintiffs argue that common issues predominate over individual issues. They contend that this is a bad faith trespass case, in which the court need only assess several common issues, namely the granting language in the four categories, concealment of the fiber optic cables, whether there is a continuing tort, the proper prescriptive period, and the damages and civil fruits due to them. Alternatively, the plaintiffs contend that even if different prescriptive periods apply or individual *118 damages must be assessed, it does not preclude class certification, because the trial court has the power to alter, amend or recall its ruling on certification.
LSA-C.C.P. art. 591 B(3) requires the trial court to determine whether common questions predominate over any questions affecting only individual members. "This requirement restricts class actions to those cases that would achieve economies of time, effort, and expense, and promote uniformity of decision among those similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Daniels, 877 So.2d at 1017.
Furthermore, it is well settled that the existence of individual damage issues is not a bar to class certification. Id., at 1016. The mere fact that varying degrees of damages may result from the same factual transaction and legal relationship or that class members must individually prove their right to recover does not preclude class certification. Id., at 1018.
In addition, the fact that resolution of class actions may place added responsibilities and burdens on the trial court should not be allowed to overcome the fact that a class action meeting all the requisites will facilitate a prompt, efficient, and relatively inexpensive trial of the common issues as opposed to separate cases. Daniels, supra at 1016, citing Billieson v. City of New Orleans, 98-1232 (La.App. 4 Cir. 3/3/99), 729 So.2d 146.
There are some situations where courts have determined that a case is not manageable as a class action because of the necessity for individualized damages determinations, but nevertheless, failure to certify an action under Rule 23(b)(3)[the federal counterpart] on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule ... Id. [T]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action ...
Id., at 1017, citing In re Visa Check/Master-Money Antitrust Litigation, 280 F.3d 124 (2nd Cir.2001), cert. denied, 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002).
The trial court in its reasons for judgment found that common issues predominated over individual issues and there was no substantial interest in individual control by class members in the prosecution of this case making certification appropriate pursuant to LSA-C.C.P. art. 591(B)(3). We agree with the trial court.
In this case, there are questions of fact and law that are common to the proposed representatives and the class that predominate over any possible individual issues regarding prescription and damages. The question of whether this case is a bad faith trespass or inverse condemnation as the defendants suggest is a determination that is best made at a trial on the merits. This assignment of error lacks merit.
In allegation of error four, the defendants argue that a class action is not the superior method for adjudication of this litigation, because of the difficulties in defining the class, identifying its members, and providing the members of the class with constitutionally adequate notice. The defendants claim that the plaintiffs in this trespass case will be required to prove ownership of the property, which is an individual inquiry involving the conveyance records in each parish. They contend that this would make the class action unmanageable. Plaintiffs respond that identification of the class members through the public tax records is sufficient to meet constitutional due process.
*119 The trial court in its reasons for judgment found that a class action device was the superior and most efficient means of resolving the claims of the class considering the size and scope of the relief requested making certification appropriate pursuant to LSA-C.C.P. art. 591(B)(3). The trial court noted that in this case, each plaintiff's burden of proving their claims in a separate action would be prohibitive making it impractical for many of the of the class members to pursue their claims without class certification.
A class action is the superior method of adjudication for promoting the basic aims and goals of a procedural device, which are effectuating substantive law, judicial efficiency, and individual fairness when there exist common character of rights. Duhe v. Texaco, Inc., 779 So.2d at 1081.
In this case, the plaintiffs and the members of the proposed class are all Louisiana residents who allege that Entergy knowing and intentionally committed a bad faith civil trespass installing without their permission a fiber optic cable network within previously acquired servitudes, and failed to compensate them for the unauthorized and unlawful use of their land while concealing the network's existence. We believe that it is unlikely that most of the plaintiffs will be able to pursue and sustain separate litigation against Entergy, which makes it all the more desirable for plaintiffs to pursue a class action. In fact, we can perceive of no individual interest in controlling the litigation in separate cases. Also, given the fact all of the plaintiffs' claims arose out of the same course of conduct and are based on the same legal theories, it is desirable that there be a concentration of the litigation, since the injunctive and declaratory relief sought by the plaintiffs, if granted, would affect the interests of those landowners that are not party to the litigation. While any potential complexity of this action affecting manageability is speculative at this stage in this litigation, management problems in and of themselves should not defeat this class action. Therefore, we find no error in the trial court's determination that a class action is the superior method for the fair and efficient adjudication of this case pursuant to LSA-C.C.P. art. 591(B)(3).

CONCLUSION
For the above discussed reasons, we find no manifest error in the trial court's decision that plaintiffs have proven the requirements for class certification pursuant to LSA-C.C.P. art. 591. Accordingly, the judgment of the trial court granting plaintiffs' motion for class certification is affirmed. All costs are assessed against appellant.
AFFIRMED
NOTES
[1] The defendants are wholly owned subsidiaries of Entergy Corporation, a New Orleans based utility holding company. The defendants will herein after be collectively referred to as "Entergy" unless otherwise specified.
[2] The servitudes on the two properties owned in part by Schexnayder and Labat were granted by Arthur Schexnayder, Sr. and Michael Schexnayder to Louisiana Power & Light Company ("LP & L"), the predecessor of Entergy in 1965.
[3] The servitude on the property owned by the Estate of Theodore Dreyfus, Inc. was granted by the estate in 1968 and 1975.
[4] Plaintiffs stated that it is not relevant that there are no proposed representatives with a servitude containing language from servitude categories two and four, because it is not necessary that there be a representative for each different type of claim in the class definition.
[5] Alternatively, they argue that even if Estate of Theodore Dreyfus, Inc. is not a proper class representative, the trial court order should be affirmed, because the adequacy requirement under LSA-C.C.P. art. 591(A)(4) is satisfied by one of the other representatives.