13 So.3d 1154 (2009)
George H. CONRAD, Brian Arthur and All Those Similarly Situated
v.
LAMARQUE FORD, INC.
No. 08-CA-673.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 2009.
Rehearing Denied July 6, 2009.
*1156 Robert D. Hoffman, Jr., Attorney at Law, Covington, LA, for Plaintiff/Appellee.
James M. Garner, Richard P. Richter, Joshua S. Force, Attorneys at Law, New Orleans, LA, and Roy M. D'Aquila, Ronald J. Vega, Attorneys at Law, Kenner, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Lamarque Ford Inc. appeals a final judgment certifying a class of "All persons who purchased a vehicle from Lamarque Ford from 1998 through the present, who were entitled to a rebate, but whose purchase documents do not disclose that they received that rebate." Lamarque contends on appeal that the trial court erred by certifying the class. We disagree with Lamarque's contentions and affirm the judgment.

Factual Background
Plaintiffs/Appellees George H. Conrad and Brian Arthur as purported class representatives sued defendant/appellant Lamarque[1] due to its alleged failure to provide them with manufacturer rebates on their vehicle purchases. William P. Chauvin and William T. Cochran, Jr. later joined the suit as class representatives. The plaintiffs alleged that they purchased vehicles from Lamarque in 1999 and 2000. They alleged that the manufacturer provided rebates for these vehicles but Lamarque did not so advise them. Instead, Lamarque received the rebate from the manufacturer when it should have been paid to the plaintiffs. They further alleged that in each case there was a "Customer Cash Authorization" form, which allowed Lamarque to receive the rebates. The plaintiffs alleged that a signature purporting to be that of each plaintiff was affixed to provide such authorization but *1157 none of the plaintiffs actually signed the form.
In the original and supplemental petitions, the plaintiffs defined the class as follows: "[a]ll persons who purchased motor vehicles from the defendant [who] were also entitled to rebates which were not disclosed to them, for which they received no credit and which were converted by the defendant."
The plaintiffs alleged various causes of action, including fraud. They sought to recover the rebates, a refund of all loan finance charges or credit service charges, attorneys' fees, and costs.
The court held a hearing on the request for class certification on November 28, 2007. On the morning of the hearing, plaintiffs' counsel orally revised the parameters of the requested class definition to "all persons who purchased a vehicle from Lamarque Ford from 1998 through the present, who were entitled to a rebate, but whose purchase documents do not disclose that they received that rebate." The revised definition changed in two respects. First, it now limited the membership in the class to those who purchased vehicles "from 1998 through the present" rather than "all persons who purchased vehicles." Second, it removed the requirements that the member received no credit for the rebate and that the dealer converted the rebate. Rather, the member need only show that the person was entitled to a rebate, but his purchase documents did not disclose that he received the rebate.
Plaintiffs argued that the goal at the certification hearing was not to prove whether the plaintiffs received the rebate. Plaintiffs' counsel explained that the defendant only provided dealer files of the named plaintiffs but refused to give any further information. He stated that in order to engage in further discovery, to determine class membership, the class must be defined. However, plaintiffs' counsel had documents that had already been produced in other litigation involving the defendant that he would attempt to introduce that day. He argued that the other files clearly indicated that these individuals were entitled to rebates but the documents did not reveal that they received them.
Lamarque's counsel pointed out that the plaintiffs were attempting to change the definition of the class presented in their petition. He stated that the newly-defined class might essentially include almost everyone who purchased a vehicle. Also, he stated that the plaintiffs were trying to obtain class certification in order to conduct a fishing expedition and subpoena all of the defendant's records. Counsel further stated that if the court proceeded to conduct a hearing to certify the class as newly-defined, he would "certainly put on a defense to that." Thus, counsel did not specifically object to the trial judge's proceeding with the hearing.
Plaintiffs' counsel responded that he did not have to prove his case in a class certification hearing. At first, he stated that he would prove the elements required for class certification "after the class gets certified," thus suggesting that he conceded that he did not meet the requirements for class certification. Next, however, he explained that he merely had to prove the elements required for class certification. He stated that whether or not the putative members actually did receive the rebate would be subject to further proof. Therefore, considering his statements in context, it appears that counsel was merely indicating that proof of the merits of the claims was inappropriate for a class certification hearing. He asked the court for an opportunity to call witnesses and asked that the class be certified in accordance with his newly-defined class.
*1158 The trial judge replied: "Go ahead, call your first witness."
Plaintiffs' counsel introduced 1999 and 2000 customer sales documents from Lamarque for thirty-eight customers involving approximately twenty-six salespersons.[2] These sales pertained to various models and sales prices.
With the exception of one file, all files introduced into evidence included a document labeled "Customer Cash Payment Authorization." One section of the authorization described incentive information for the vehicle, listing program number(s) and dealer amount(s).[3] A second section provided the customer with two options. Option "A" was an assignment of the cash incentive to the dealer, Lamarque. Option "B" was direct payment to the customer. Also included on the document was a signature which purported to be that of the customer selecting Option "A," the assignment.
Of the thirty-eight customer files introduced into evidence, twenty-two contained a "Retail Buyers Orders" form with the purported purchaser's signature indicating that the form was explained to them and that they understood it. The "Retail Buyers Orders" form included a section labeled "Rebates." But in those twenty-two cases, the rebate was not disclosed on the retail buyers order in that section or otherwise noted on the retail buyers order. Of these twenty-two, the files also contained a purported assignment of the rebate to Lamarque.
Of the thirty-eight customers' files, thirteen contained the vehicle application to the state as well as the rebate assignment to Lamarque. The vehicle application to the state in those thirteen files, however, did not disclose the rebate in the section provided for that purpose.[4]
Plaintiffs' counsel called William P. Chauvin, a purported class representative, and Guy Perniciario, a long-term Lamarque employee, as witnesses. Mr. Chauvin was the only plaintiff to testify at the hearing. He stated that he purchased a vehicle from the defendant in 2000. The rebate was never discussed with him at any time during the purchase negotiations. Although his signature was purportedly on the document assigning the rebate to Lamarque, he testified that he did not sign the document.
Guy Perniciario testified that he was one of the two salespersons who handled the Chauvin sale. Counsel referred Mr. Perniciario to Mr. Chauvin's customer file documents. Mr. Perniciario agreed that Mr. Chauvin's rebate assignment document indicated that he was entitled to a $1,000 rebate. He also agreed that this amount was not reflected on the retail buyers order or on Mr. Chauvin's vehicle application with the Office of Motor vehicles.
When counsel asked Mr. Perniciario to explain his failure to indicate the rebate on the sales documents, he replied that he did not show a rebate on Mr. Chauvin's buyers order because he gave the bottom-line price after everything was taken out. He testified that he did not recall whether he saw Mr. Chauvin sign the assignment *1159 form. However, the finance department completed most of the paperwork.
Counsel asked Mr. Perniciario whether he previously testified in his deposition that he omitted listing the rebate because he was attempting to save customers sales tax. Mr. Perniciario replied that there were times when rebates were taxable. According to Mr. Perniciario, rebates were taxable for a brief period of time. As a result, some customers asked to take the rebate off the selling price. He learned through an inquiry that rebates were not taxed at the time of the Chauvin sale. But he did not recall the exact dates when rebates were taxable.
During cross-examination, Mr. Perniciario testified that he could verify every potential rebate by running the vin number of the vehicle in the Ford system. Counsel referred him to a document in Mr. Chauvin's customer file. Mr. Perniciario identified the document in Mr. Chauvin's file that showed the running of the vin number for rebate eligibility. He testified that the document showed various rebate incentive programs. One program provided for $1,500 in cash. Another program provided for $1,000 in cash plus a low-interest rate. The $1,500 cash incentive did not include the low-interest rate. Mr. Perniciaro testified that he was convinced that Mr. Chauvin received the benefit of the $1,000 rebate because Mr. Chauvin's file reflected that he received the low-interest rate, which the Ford program included with the $1,000 cash incentive.
Lamarque's counsel called two Lamarque employees to testifyRay Hoffman, and Joe Gorman.
Joe Gorman testified that he processed rebates through the factory. Counsel showed him a document from Mr. Chauvin's file. Mr. Gorman recognized the form referred to as a Vincent program. It showed the incentive programs being offered to the customer and also to the dealer. He testified that based on his review of Mr. Chauvin's file, Mr. Chauvin received the 0.9% financing incentive. He stated that Mr. Chauvin definitely received the customer cash rebate based on Mr. Chauvin's signature assigning the rebate to Lamarque.
During cross-examination, counsel referred Mr. Gorman to various documents in Mr. Chauvin's file. Mr. Gorman admitted that some of Mr. Chauvin's purported signatures did not appear to be the same. On redirect examination, however, he admitted he had no expertise in analyzing signatures.
Ray Hoffman testified that he supervised the finance department. Counsel referred him to documents in Mr. Chauvin's file. Mr. Hoffman testified that based on his review of these documents from Mr. Chauvin's file, Mr. Chauvin received credit for the rebate. This was because a customer could not receive the low-interest rate without also receiving the cash incentive.
Counsel referred him to other documents that were contained in Mr. Chauvin's file. Mr. Hoffman identified a power of attorney form that was contained in Mr. Chauvin's file.
Our review of that form indicates that it provided a section wherein the purchaser could sign designating an appointed party to act as his attorney-in-fact. The form contained Mr. Chauvin's purported signature authorizing the appointment. However, the line that provided for naming the attorney-in-fact was blank. The form provided that the purpose of the appointment was "for transferring title and registration, assignment of title, and applications for titles to the above described motor vehicle and with full authority to sign on my(our) *1160 behalf all papers and documents and to do all things necessary to this appointment."
According to Mr. Hoffman, it was customary to have a customer sign the form. He stated that the form allowed the dealership to sign any necessary documents on the customer's behalf toward selling and registering the vehicle. He believed that the form included rebate assignment authorization.
Mr. Chauvin testified that although it appeared that it was his signature on the power of attorney form, no one explained that the power of attorney would allow someone at the dealership to sign the rebate authorization form in order for the dealer to obtain his rebate. Furthermore, he did not understand that document to authorize anyone to sign his name on a rebate authorization form.

Law
La.C.C.P. arts. 591 through 597 describe the basic requirements for a class action in Louisiana. La.C.C.P. art. 591(A) requires the following: (1) The class is so numerous that joinder of all members is impracticable. (2) There are questions of law or fact common to the class. (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class. (4) The representative parties will fairly and adequately protect the interests of the class. (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
Under Louisiana law, plaintiffs must meet all of the above requirements of La. C.C.P. art. 591(A) and fall within one of the subsections of 591(B). Daniels v. Witco Corp., 03-1478, p. 5 (La.App. 5 Cir. 6/1/04), 877 So.2d 1011, 1014, writs denied, 04-2283, 04-2287, 888 So.2d 204, 205 (Citation omitted).
La.C.C.P. art. 591(B) pertinently provides:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

*1161 (c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or ...
Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class. La. C.C.P. art. 591(C).
La.C.C.P. art. 592(A)(3)(c) pertinently provides: In the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.
The burden of establishing that the statutory criteria are met falls on the party seeking to maintain the class action. Daniels, supra, 03-1478 at 5, 877 So.2d at 1014 (Citations omitted).
In the instant case, the trial judge found that the plaintiffs' claims met all of the criteria set forth in Article 591(A), namely numerosity, commonality, typicality, adequacy of representation, and an objectively definable class. The trial judge also found that the elements of predominance and superiority set forth in Article 592(B)(3) had been satisfied.

Standard of Review
The standard of review for class action certifications is bifurcated. The factual findings are reviewed under the manifest error/clearly wrong standard, but the trial court's judgment on whether or not to certify the class is reviewed by the abuse of discretion standard. Oubre v. Louisiana Citizens Fair Plan, 07-66, p. 6 (La. App. 5 Cir. 5/29/07), 961 So.2d 504, 509, writ denied, 07-1329 (La.9/28/07), 964 So.2d 363 (Citations omitted). A trial court has wide discretion in deciding whether or not to certify a class. Id. Any errors to be made in deciding class action issues should be in favor of and not against maintenance of the class action, because a class certification order is subject to modification if later developments during the course of the trial so require. Id., 07-66 at 6-7, 961 So.2d at 509.
When reviewing the trial court's ruling regarding class certification, we do not consider whether plaintiffs' claims state a cause of action or have substantive merit, or whether plaintiffs will ultimately prevail on the merits. Oubre, supra, 07-66 at 7, 961 So.2d at 509 (Citations omitted). Rather, our task is to examine plaintiffs' legal claims and to determine only whether a class action is the appropriate procedural device in light of established Louisiana criteria. Id. (Citation omitted).
Plaintiffs' evidence minimally establishes the requisites for class certification. Had this court been making the initial determination, we may have decided this case differently. However, our task, in this case, is not to make findings of fact; rather, we are called upon to determine whether the trial court's findings of fact are manifestly erroneous or clearly wrong. *1162 Furthermore, given the trial judge's wide discretion in certifying a class, and mindful of La.C.C.P. art. 592(A)(3)(c) that allows a trial judge to decertify a class at any time before a decision on the merits of the common issues, we affirm the judgment for the reasons that follow.

Analysis

Numerosity/Definability
La.C.C.P. art. 591(A)(1) requires that "[t]he class is so numerous that joinder of all members is impracticable." The numerosity requirement is not met by simply alleging a large number of potential claimants. Pulver v. 1st Lake Properties, Inc., 96-248, 5 (La.App. 5 Cir. 9/18/96), 681 So.2d 965, 968. To establish numerosity, a determination must be made on the facts and circumstances of each individual case. Id. (Citation omitted). Although the identification of all potential class members is unnecessary, the party seeking certification should be able to establish a definable group of aggrieved persons. Id.
La.C.C.P. art. 591(A)(5) requires that the class be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. Oubre v. Louisiana Citizens Fair Plan, 07-66, p. 14 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, 513, writ denied, 07-1329 (La.9/28/07), 964 So.2d 363. The parties seeking certification must be able to establish a definable group of aggrieved persons based on objective criteria derived from the operative facts of the case. Id. (Citation omitted). The definition of the class should provide a sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or a part of it. Clement v. Occidental Chemical Corp., 97-246, p. 9 (La.App. 5 Cir. 9/17/97), 699 So.2d 1110, 1114, writ denied, 97-2884 (La.1/30/98), 709 So.2d 718 (Citation omitted).
Appellant argues that the "numerosity" requirement was not satisfied because the class would necessarily include those customers who did not directly receive the rebate but who nonetheless received a reduction in the purchase price. Thus, the evidence did not demonstrate that there were a sufficient number of customers who were aggrieved in the same manner.
Also, appellant asserts that the plaintiffs acknowledged that there was insufficient evidence. As previously discussed, the thrust of the plaintiffs' argument at the hearing, however, concerned the need to prove whether or not the customers actually received the rebate.
Additionally, appellant argues that the trial judge erred by holding that the plaintiffs satisfied the definability requirement because each member must be questioned regarding his negotiation with the salesperson. Therefore, the determination of class membership would require individual mini-trials.
Although appellant argues that customers could have received the rebate in the form of a discounted price, this argument goes to the defense. The subject of this appeal deals strictly with whether a class was properly certified. We will not delve into the merits of a case when reviewing an order denying or granting class certification. See: Oubre, supra, 07-66 at 7, 961 So.2d at 509 (Citations omitted). The question of whether a class member actually received the benefit of the rebate would require this Court to go to the merits of the case, and this is simply not proper in determining if class certification was proper. Id.
*1163 Importantly, the class definition in this case rests on the common question: Did the defendant fail to advise these class plaintiffs about their entitlement to rebates and obtain an unauthorized assignment of their rebates to the defendant? The documents introduced at the hearing reveal inconsistencies regarding the defendant's written rebate notification to the customer. In particular, despite written notification of the rebate through the "Customer Cash Payment Authorization" form (the form assigning the rebate to the dealer), the rebate was generally not listed on the retail buyers order form that the customer also purportedly signed. Moreover, in thirteen files, the rebate that had been noted elsewhere was not listed on the vehicle application to the state.
Whether the rebate incentive which appears in the sales documents was properly assigned to the defendant is an issue which applies to all class members equally, especially because of the common business practice of otherwise omitting written notification of the rebate on other sales documents. As such, our review in this case reveals that the trial judge's factual findings that the evidence submitted was sufficient to satisfy the requisite elements of "numerosity" and "definability" were not manifestly erroneous. The class has been defined by a definable group of aggrieved persons based on objective criteria derived from the operative facts of the case.

Commonality
Article 591(A)(2) requires that "[t]here are questions of law or fact common to the class." Under La. C.C.P. art. 591(B)(3), the "predominance requirement," the trial court must determine whether questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Daniels v. Witco Corp., 03-1478, p. 6 (La.App. 5 Cir. 6/1/04), 877 So.2d 1011, 1015, writs denied, 04-2283, 04-2287 (La.11/19/04), 888 So.2d 204, 205 (Citation omitted). While subsection (A)(2) of that article requires that there be questions of law or fact common to the class, subsection (B)(3) requires further that these common questions predominate over any questions affecting only individual members. Id. This requirement restricts class actions to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Id. (Citation omitted). Under certain circumstances, the existence of individual causation and liability issues as to each potential class member may so predominate over common issues that class certification is inappropriate. Bernard v. Thigpen Const. Co., Inc., 97-1877 (La.11/21/97), 702 So.2d 1387, 1387 (per curiam).
Appellant argues that an alleged fraud case, such as this one, is not suitable for treatment as a class action due to the variation in the representation made and the customer's degree of reliance on that representation. It relies on Banks v. New York Life Ins. Co., 98-0551 (La.7/2/99), 737 So.2d 1275, cert, denied, 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000).
In Banks, the plaintiffs filed suit on behalf of those who had purchased life insurance from New York Life Insurance, Co. Illustrations such as charts and explanatory brochures were available to assist agents in the sales presentations. The misrepresentations in that case were allegedly written in the illustrations and based upon oral statements by the individual insurance agents. The Court found that the trial court would be required to scrutinize each plaintiffs case individually to determine whether the oral representations were at odds with the written disclosures *1164 and analyze whether the plaintiffs relied upon oral statements, written materials or both. The Court concluded that there were too many individual issues affecting New York Life's and its agents' liability in that case to find that common issues predominate. 98-0551, pp. 4, 9, 10, 12 (La.7/2/99), 737 So.2d 1275, 1278, 1281-82, 1283.
Banks is distinguishable. That case involved approximately 1,000 insurance agents who sold 101,109 policies to Louisiana residents, 1,850 of whom comprised the class. 98-0551 at 3, 737 So.2d at 1278. The present case is less formidable. See also: West v. G & H Seed Co., 01-1453, 27 (La.App. 3 Cir. 8/28/02), 832 So.2d 274, 291 where, in a fraud class action, the Third Circuit distinguished Banks primarily on the basis that the West case did not involve such a large number of subjective inquiries.
Likewise, the present case is distinguishable from Chiarella v. Sprint Spectrum LP, 04-1433, p. 3 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 110, writ denied, 05-2539 (La.3/31/06), 925 So.2d 1263. In Chiarella, the plaintiffs sought a class action against numerous defendants. Some plaintiffs purchased their phones directly from the Sprint Defendants, while others purchased their phones from the Retail Defendants. The petition focused on alleged false representations made to the plaintiffs with the intent to deceive and defraud the class members and to induce them to purchase phones sold by the Sprint Defendants and Retail Defendants and subscribe to the Sprint PCS wireless service. Id. The purported class included all individuals, businesses, corporations, or other entities, who subscribed to Sprint PCS wireless service or who purchased a Sprint telephone in the Greater New Orleans market, from May 1997, and for two years thereafter. Based on that definition, the parties agreed that there were about 60,000 persons in the New Orleans area who were Sprint PCS wireless subscribers during that two-year period. Id. The plaintiffs' suit against the Sprint Defendants and Retail Defendants alleged that the Sprint PCS wireless system installed by the Sprint Defendants in the New Orleans area and the telephones sold with that system did not provide the plaintiffs with the services to which they were entitled and for which they had bargained. In particular, they experienced a high volume of blocked and dropped calls, as well as the inability to place and/or receive calls in geographical regions that the Sprint Defendants and Retail Defendants allegedly represented were available for use. Chiarella, supra, 04-1433 at 4, 921 So.2d 111. Relying in part on Banks, the Court concluded that the predominance requisite was not met. The Court found that the trial court would be required to analyze whether each plaintiff justifiably relied upon what he/she was told and/or saw before deciding to purchase Sprint PCS wireless service. 04-1433 at 25, 921 So.2d 123. The task here is not as daunting.
Here, the plaintiffs have not limited their allegations to fraud. They also alleged unfair trade practices, failure to act in good faith, concealment, and unjust enrichment. The common complaint is that the defendant's business practice did not allegedly apprise the customers of the rebates, which were allegedly assigned to the defendant without their authorization. The source of contention in this case is the defendant's decision to only provide written notice of the rebate on an assignment form. Mr. Chauvin testified that he did not sign the assignment form. Although Mr. Hoffman construed a power of attorney as giving authorization to assign rebates, Mr. Chauvin disagreed.
*1165 The common issues that predominate in the case at bar are the assignment authorization to the defendant which is common to all class members' sales involving rebate incentives and the question of whether the class members gave that authorization.
We conclude that the trial judge was not manifestly erroneous in finding that common issues predominated over individual ones, and that the causative link between the defendant's conduct and the plaintiffs' damages is the same for all plaintiffs. The possibility that some persons may fail to prevail on their individual claims will not defeat class membership. Duhe v. Texaco, Inc., 99-2002, p. 15 (La. App. 3 Cir. 2/7/01), 779 So.2d 1070, 1080, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637 citing Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624, n. 1 (5th Cir.1999), cert, denied, Treasure Chest Casino v. Mullen, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000).
The trial judge believed that common issues would predominate in the determination of liability on the merits, and that these issues were common to all class members. The trial court is in a better position to assess the relative strength of the class action procedural mechanism to do justice in this circumstance. Further, the trial court maintains the opportunity to address the appellant's concerns through decertification of the class if necessary. We will not disturb the trial court's discretionary findings on this point.

Typicality
Typicality, La.C.C.P. art. 591(A)(3), requires that the claims of the class representatives be a cross-section, or typical of, the claims of all class members. Schexnayder v. Entergy Louisiana, Inc., 04-636, p. 9 (La.App. 5 Cir. 3/29/05), 899 So.2d 107, 114, writ denied, 05-1255 (La.12/9/05), 916 So.2d 1058 quoting Duhe v. Texaco, Inc., 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1079, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637 (Citations omitted). The test for typicality, like commonality, is not demanding. Id. It satisfies typicality if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory. Id.
Appellant argues that the trial judge erred in holding that Mr. Chauvin's claims typify those of the absent class members. It asserts that fraud requires fact-intensive and individualized inquiries. Determining whether the alleged forgery was actually authorized would require individual testimony from each class member and the appellant's salespersons. Furthermore, due the variance in negotiations, none of these individual negotiations were "typical."
The trial judge found that the typicality element was established. She was aware of the possibility of factual variations. However, she concluded: "Though it may appear at trial that there are some factual variations, the overriding issues concern whether Lamarque intentionally failed to disclose the existence of customer rebates to which class members were entitled." We find no manifest error in her factual determination.

Adequacy
The purpose of the adequacy requirement, La.C.C.P. art. 591(A)(4), is to protect the legal rights of the unnamed class members. Schexnayder v. Entergy Louisiana, Inc., 04-636, p. 9 (La.App. 5 Cir. 3/29/05), 899 So.2d 107, 115, writ denied, 05-1255 (La.12/9/05), 916 So.2d 1058 quoting Duhe v. Texaco, Inc., 99-2002 (La. App. 3 Cir. 2/7/01), 779 So.2d 1070, 1079, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637 (Citation omitted). In federal law, it is not required that the named *1166 plaintiffs understand all of the legal intricacies of the suit in order to adequately represent the class. Id. The test often used for adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to insure vigorous advocacy; and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Id.
Appellant argues that the court erred by holding that the plaintiffs satisfied the adequacy requirement as Mr. Chauvin effectively abdicated his role as class representative to the attorney. Appellant points to Mr. Chauvin's testimony. In particular, appellant notes that Mr. Chauvin testified that he understood his duty as a class representative as it was explained by his attorney. Mr. Chauvin had not contacted any other customer, had not looked at any records other than his own, and had not done any research as to how automobile rebate programs worked. He also testified that he did not know the difference between the invoice and the sticker price. Mr. Chauvin, however, also testified that he understood his duty was to represent others who had similar situations in an effort to secure relief for them as it would for himself. The trial judge found that Mr. Chauvin had "first hand knowledge" of the defendant's alleged conduct; he submitted evidence sufficient to establish that he had suffered an actual injury; his stake in the litigation was typical of that of other class members; he demonstrated his willingness to fulfill his role by appearing to testify before the court about his claims; and, there was no indication that Mr. Chauvin had any conflicting interests. There is evidentiary support for the court's finding that Mr. Chauvin will adequately represent the interests of the class, and the record as a whole does not indicate that this finding was manifestly erroneous.

Superiority
Appellant contends that the trial judge erred in finding that the class certification requirement of superiority had been met, pursuant to La.C.C.P. art. 591(B)(3).
When a common character of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic goals of a procedural device: 1) implementing the substantive law at issue in the case; 2) providing judicial efficiency in carrying out the substantive law; and 3) insuring individual fairness to all parties involved. Oubre v. Louisiana Citizens Fair Plan, 07-66, p. 13 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, 512, writ denied, 07-1329 (La.9/28/07), 964 So.2d 363 (Citations omitted). If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether some other procedural device would better serve these goals. Id.
Appellant argues that because the plaintiffs could not satisfy the other elements of Article 591, the class action device is procedurally inappropriate. We find no merit to this argument because we find that the plaintiffs satisfied the other elements of Article 591.
Appellant also argues that the trial judge erred because the plaintiffs could pursue their claims in a Justice of the Peace Court or Parish Court. And, due to the individualized and unique considerations presented by each claim, those fora would be superior to a class action.
The trial judge found that "because the plaintiffs' claims are of modest monetary *1167 value, requiring them to proceed by individual trials will disenfranchise large numbers of injured persons from the legal system." She concluded that the "costs associated with individual liability suits would exceed the value of plaintiffs claims." Considering that "the ultimate goal of the class action is to efficiently and fairly ensure that the substantive law underlying the plaintiffs' claims is effectuated,' the trial judge carefully balanced "considerations of procedural fairness with judicial efficiency." She found "that class action [was] virtually the only method by which that goal will be achieved in this case."
Considering the trial judge's well-reasoned conclusions in light of the record before us, we cannot say that the trial judge erred in finding that a class action is the superior procedural device in this matter.

Conclusion
In conclusion, we do not find that the trial court's findings of facts were manifestly erroneous, nor do we find that the trial court abused its discretion to certify the plaintiffs' claims as a class action. We note, however, that the trial court can revisit or modify its decision regarding class certification if later developments so require. See: La.C.C.P. art. 592(A)(3)(c).

Decree
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
CHEHARDY, J. dissents with reasons.
CHEHARDY, J. dissents with reasons.
I disagree with the majority opinion in this matter on three main points. First, it appears that the Plaintiffs impermissibly expanded their pleadings during the certification hearing. In their amended petition, Plaintiffs sought to certify a class of "all persons who purchased motor vehicles from [Lamarque Ford] and who were entitled to a rebate, but did not receive the rebate, and received no credit for the rebate." At the hearing on the matter, however, Plaintiffs sought to certify a class that included "people who purchased a vehicle from Lamarque Ford from 1998 through the present, who were entitled to a rebate, whose purchase documents do not disclose that they received the rebate." In my view, these two groups represent significantly different classes of individuals, which expanded the class.
Moreover, Plaintiffs should not have been allowed to redefine the class without amending their pleadings. Furthermore, the impermissible expansion does little to cure the original problems in Plaintiffs' quest for class certification. In fact, the expanded class appears to exacerbate the already problematic issues of commonality and typicality.
My second concern is that commonality cannot be established in this case because each separate claim will be grounded in very disparate questions of fact about the negotiation process between the parties and Lamarque, and how the claimant was credited for any rebate to which they may have been entitled. Plaintiffs' class representative could not give details after reviewing other putative class members' transaction documents that would indicate whether or not prospective purchasers were informed of the existence of rebates, if they were given the benefit of those rebates through some type of credit, or if Lamarque converted any undisclosed rebates. In sum, the class representative's claim will not be common to those of other members of the class because the specific negotiation that led to each transaction will not be common.
*1168 Finally, in my view, the Plaintiffs cannot prove typicality because the class of claims are not grounded in any similar event. Each claim will, in fact, be subject to a mini trial, and the purpose of class certification will be thwarted. For these reasons, I would reverse the judgment of the trial court, and remand the case for further proceedings.
NOTES
[1] The petition was originally filed in St. Tammany Parish but was transferred to Jefferson Parish after the trial judge granted an exception as to venue.
[2] Guy Perniciario, a Lamarque Ford employee, identified the documents as those that were regularly kept by his employer.
[3] There were 15 types of incentives for rebate amounts that ranged from $300 to $1,500.
[4] In contrast to the files that only provided written disclosure of the rebate through the assignment form, which the plaintiffs alleged was not signed by the customer, plaintiffs' counsel introduced a file in which written disclosure of the rebate was indicated on the buyer's order as well as on the state's vehicle application.