MICHAEL BRANTLEY, JR., ET AL

VERSUS

CITY OF GRETNA &
REDFLEX TRAFFIC SYSTEMS, INC.

NO. 21-CA-574

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 760-182, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

August 05, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

<u>**AFFIRMED**</u>
 **SMC**
 **FHW**
 **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

_Alexis Barteet_
Alexis Barteet
Assistant Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
MICHAEL BRANTLEY, JR.; DEBRA BOUDREAUX, INDIVIDUALLY AND
ON BEHALF OF HER DECEASED HUSBAND, ROBERT BOUDREAUX;
JUDITH TRAIGLE; CHARLES W. BRISON, JR.; PATRICIA CUNNINGHAM;
DELORES TORTORICH; TERENCE S. COOPER, SR.; AND ERIN STREVA

     Gordon L. James
     Robert M. Baldwin
     G. Adam Cossey
     Margaret H. Pruitt

COUNSEL FOR DEFENDANT/APPELLEE-2ND APPELLANT,
CITY OF GRETNA

     Leonard L. Levenson
     Christian W. Helmke
     Colleen B. Gannon
     Donna R. Barrios
     E. John Litchfield
     Michael J. Marsiglia

COUNSEL FOR DEFENDANT/APPELLANT,
REDFLEX TRAFFIC SYSTEMS, INC.

     Nancy S. Degan
     Kent A. Lambert
     Leopoldo J. Yanez
     Emily Olivier Kesler
     Kim M. Boyle
     Allen C. Miller, Sr.

**CHEHARDY, C.J.**

Defendants, the City of Gretna ("Gretna") and Redflex Traffic Systems, Inc. ("Redflex") appeal the trial court's March 30, 2021 judgment granting plaintiffs' motion for class certification, appointment of class representatives, and appointment of class counsel in their lawsuit challenging the legality of an Electronic Speed Enforcement Ordinance adopted by the Gretna City Counsel in 2008. For the following reasons, we find the elements necessary for class certification are present and we affirm the trial court's judgment certifying the class.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In April 2008, the city council of Gretna unanimously adopted Ordinance 3678. This Ordinance amended Chapter 90 of the City of Gretna's Code of Ordinances to add sections 505-511 in order to establish and authorize the use of a photographic vehicle speed enforcement system. The Ordinance provided that the Gretna Police Department ("Department") was responsible for its enforcement and administration, but that "the department may enforce and administer [the Ordinance] through one or more contractors." In this regard, the City of Gretna contracted with Redflex for the enforcement of the Ordinance, including the issuance of citations and collection of fees. The Ordinance, codified as Gretna City Ordinances 90-505 through 90-511, became effective on December 15, 2008, and thus began defendants' operation of Gretna's Electronic Photo Enforcement Program (the "Program").[1]

Pursuant to the Program, Redflex places mobile, photograph speed enforcement equipment (including radar, cameras, and a computer system) on the

---

[1] The Ordinance provided that the Program would operate under the authority of the Gretna Police Department in the offices of the Clerk of Court for the City of Gretna Mayor's Court.

side of public roadways located within the city limits of Gretna, Louisiana, which roadways include, but are not limited to, Lafayette Street, Westbank Expressway, Gretna Boulevard, LaPalco Boulevard, Franklin Avenue, and Whitney Avenue.[2] If the computer system records a vehicle traveling in excess of the posted speed limit, it takes a short video and photographs the vehicle. That information is then uploaded and transmitted to Redflex's processing center in Phoenix, Arizona, via internet transmission. Using the license plate captured by the camera, Redflex then gathers information concerning the vehicle and its registered owner through the National Law Enforcement Telecommunication System ("NLETS"), and Redflex's computer system then auto-fills a citation form with the violation information. That citation is uploaded into Redflex's proprietary "SuperScreen" software system, which contains a photographic image of the vehicle captured by the cameras, the license plate, and the name of the registered owner. Once the citation is reviewed by a Gretna Police Department employee, and it is determined that a violation has occurred, Redflex is then authorized to issue a Notice of Violation ("NOV")[3] to the vehicle's registered owner, which includes the electronic signature and badge number of the city's designated officer.[4]

Civil penalties are assessed based upon the vehicle's speed as recorded by the radar equipment, and payment of the stated fine is due to the City of Gretna within thirty days. Regardless of the person actually operating the vehicle and

---

[2] Other locations where the photograph speed enforcement equipment is placed include: Belle Chasse Highway, First Street, US Highway 190, Creagan Avenue, Anson Street, Claire Avenue, Hancock Street, Louisiana Highway 23, Louisiana Highway 18, Louisiana Highway 466, Stumpf Boulevard, Derbigny Street, Huey P. Long, Mason Avenue, and Monroe Street.

[3] Unlike the Uniform Traffic Citations, the form of the NOV is not approved by the Deputy Commissioner of the Louisiana Department of Corrections. NOVs are not Uniform Traffic Citations and do not contain any notice to appear or any promise to appear. Additionally, as a civil matter, the Ordinance exempts the Department from reporting an NOV violation, or payment of a NOV, to the Department of Public Safety and Corrections because an NOV is not a Uniform Traffic Citation.

[4] No Gretna Police Department employee, nor the City of Gretna, issues any NOV under the Ordinance, but rather, they authorize Redflex to do so. If, upon checking the calibration of the electronic photographic speed equipment, Redflex determines there is an error in calibration, Redflex does not forward any violation documentation for Gretna to review.

committing the violation, the Ordinance imposes liability on the registered owner. The Ordinance does provide, however, that the owner may shift liability to the operator.

The Ordinance provides that a citation recipient may request an administrative adjudication hearing, and states, "the decision of the hearing officer shall be the final decision by city government." If the hearing officer determines the cited vehicle owner is liable, the owner is assessed an additional $30.00 for requesting the hearing. Additionally, the Ordinance provides that a person or persons aggrieved by a hearing officer's decision may file a petition for judicial review to the Mayor's Court of the City of Gretna within thirty days of the entry of decision. Once a decision by the Mayor's Court is issued, the aggrieved person may pursue supervisory review and/or appellate review as provided by Louisiana law.

In 2016, the City of Gretna adopted a revised Code of Ordinances and Ordinance 90-505 through 90-511 was re-enacted as Ordinance 52-365 through 52-371. While the numbers associated with the Ordinance changed, its substance remained the same.

In April 2016, plaintiffs filed a class action petition against Gretna and Redflex, seeking damages (*i.e.*, a refund of all fines pursuant to La. C.C. art. 2299[5]); a declaratory judgment finding that Gretna Ordinance 52-365 *et seq.* (formerly Gretna Ordinance 90-505), which created the Electronic Photo Enforcement Program, was "unlawful" as an *ultra vires* act and, therefore, void *ab initio*; and, injunctive relief prohibiting continued operation of the Program.[6]

---

[5] La. C.C. art. 2299 provides that "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."

[6] Specifically, plaintiffs allege that the fines they paid pursuant to the Ordinance were imposed by defendants without authority, in violation of prohibitory laws (namely, La. R.S. 32:398.1, La. R.S. 32:398.2, La. R.S. 32:235(C), and La. R.S. 32:41), and in violation of the Louisiana Constitution (namely, La. Const. art. I, § 2 for lack of procedural due process, and La. Const. art. VI, § 9, which prohibits local government subdivisions from enacting ordinances that govern private or civil relationships), rendering

Plaintiffs filed their first amended class action petition in July 2016, adding additional plaintiffs/class representatives and reiterating the same allegations and claims.[7]   In May 2020, plaintiffs filed their second amended petition, and within fourteen days of service thereof, on May 29, 2020, filed a motion for class certification, appointment of class representatives, and appointment of class counsel.  Defendants, Gretna and Redflex, opposed class certification on various grounds.

At the close of the hearing on plaintiffs' motion, the trial court granted class certification.  The trial court concluded the common question is whether defendants' administrative imposition of fines for moving violations in the City of Gretna is in violation of a prohibitory law and an *ultra vires* act done without authority.  It also found the evidence showed: (1) the class of individuals is so numerous that joinder is impracticable, (2) the issue is common to the class, (3) the claims of the representatives appointed are typical of the claims of the class, and (4) the named representatives adequately represent the class.  Finding the class action procedure superior to any other available method for resolving the single, paramount issue concerning the Program, the trial court reasoned it would be imprudent to try the cases individually as they may result in incompatible judgments, and class action is appropriate due to the possibility that many of the claims made by the class members may be small or nominal in nature.

Accordingly, the trial court certified the following class:

> All persons who received Notice of Violation from the Gretna Traffic Enforcement Program, as set forth in Gretna Ordinance 31678, originally codified as Ord. 90-505 through 90-511 and re-enacted as Ord. 52-365 through 53-371, and who subsequently paid any fine, fee,

---

them void *ab initio*.  According to plaintiffs, if they prevail, they will be entitled to the declaratory and injunctive relief they seek, as well as a return of the legally void fines under La. C.C. art. 2299.

[7]      In their first amended class action petition, plaintiffs also removed a claim for spoliation of evidence that was included in their original petition.

civil penalty, costs or other payments in full or partial satisfaction of the Notice of Violation.

Essentially, the proposed class will consist of all persons who both received an NOV and subsequently paid, either partially or in full, in satisfaction of the NOV. Thus, if you received an NOV, but did not pay it, you are not in the class. If you did not receive an NOV, but merely paid on behalf of someone else that did, you are not a member of the class.

The court appointed the following as class representatives: Michael Brantley, Jr.; Deborah Boudreaux, individually, and on behalf of her late husband, Robert Boudreaux; Judith Traigle; Charles W. Birson, Jr.; Patricia Cunningham; Delores Tortorich; Terence S. Cooper, Sr.; and Erin Streva. The court further appointed Gordon L. James, Robert M. Baldwin, G. Adam Cossey, and Margaret H. Pruit as counsel for the class.

Gretna and Reflex timely appealed the trial court's judgment.

**ISSUES PRESENTED FOR REVIEW**

On appeal, Gretna alleges the following assignments of error: (1) the trial court erred in determining that plaintiffs carried their burden of proof under La. C.C.P. art. 591(A) for class certification; (2) the trial court erred in failing to perform the requisite rigorous analysis and erred as a matter of law in holding that plaintiffs satisfied their burden of proof under La. C.C.P. art. 591(B)(3); and (3) the trial court erred in failing to reach the issue (deemed moot after certifying the class under La. C.C.P. art. 591(B)(3)), and holding that La. C.C.P. arts. 591(B)(1) and 591(B)(2) are inapplicable to this case, and cannot be satisfied on the face of plaintiffs' pleadings or the record in this case. Redflex also appeals alleging the trial court erred in using the wrong legal standard in certifying plaintiffs' proposed class, and in finding that plaintiffs carried their burden of proof.

**APPLICABLE LAW**

### Standard of Review

The standard of review for a trial court's ruling on a motion for class certification is tri-parte. Factual findings are subject to the manifest error standard of review. *Brooks v. Union Pacific R. Co.*, 08-2035 (La. 5/22/09), 13 So.3d 546, 554. A trial court has wide discretion in deciding whether to certify a class. *Id.* Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is wrong. *Stobart v. State, through Department of Transp. and Development*, 617 So.2d 880, 882 (La. 1993). However, we review its ultimate decision of whether or not to certify the class under the abuse of discretion standard. *Baker v. PHC-Minden, L.P.*, 14-2243 (La. 5/5/15), 167 So.3d 528, 538. Implicit in this deference "is recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Id*; *Brooks*, 13 So.3d at 554. The question of whether the trial court applied the correct legal standards in determining whether to certify the class, however, is reviewed *de novo*. *Baker*, 167 So.3d at 538.

### Class Actions Generally

A class action is a nontraditional procedure permitting representatives with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated person when a question of law or fact is common or general interest to persons so numerous as to make it impracticable to bring them all before the court. *Price v. Martin*, 11-0853 (La. 12/6/11), 79 So.3d 960, 966; *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913, 96-2917, 96-2929 (La. 9/9/97), 703 So.2d 542, 544. In such cases, the jurisprudence is well-settled that courts should err on the side of maintaining the class action. *Roberson v. Town of Pollock*, 05-332 (La.

App. 3 Cir. 11/9/05), 915 So.2d 426, 432-33, *writ denied*, 06-0213 (La. 4/24/06), 926 So.2d 550.

In general, the fundamental objective of the class action procedural devise is the achievement of economies of time, effort, and expense. *Husband v. Tenet HealthSystems Memorial Medical Center, Inc.*, 08-1527 (La. App. 4 Cir. 8/12/09), 16 So.3d 1220, 1226, *writ denied*, 09-2163 (La. 12/18/09), 23 So.3d 949; *Lewis v. Texaco Exploration and Production Co., Inc.*, 96-1458 (La. App. 1 Cir. 7/30/97), 698 So.2d 1001, 1004. With respect to the parties, the purpose and intent of the class action is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to the class representatives who bring the action, but also to all others who are similarly situated. *Price*, 79 So.3d at 966. A class action is purely a procedural device and does not impinge upon the merits of the underlying litigation or confer substantive rights. *See Baker*, *supra*, 167 So.3d at 541-42. A class certification hearing does not determine liability and is not the correct venue to decide the merits of the case or the defenses the defendant may allege. *Chalona v. Louisiana Citizens Property Ins. Corp.*, 08-257 (La. App. 4 Cir. 6/11/08), 3 So.3d 494, 503.

When reviewing a trial court's ruling regarding class certification, a reviewing court does not consider whether plaintiffs' claims state a cause of action or have substantive merit, or whether plaintiffs will ultimately prevail on the merits. *Oubre v. Louisiana Citizens Fair Plan*, 07-66 (La. App. 5 Cir. 5/29/07), 961 So.2d 504, 509, *writ denied*, 07-1329 (La. 9/28/07), 964 So.2d 363. Rather, the primary concern in the certification proceeding is simply whether the plaintiffs have met the statutory requirements to become a class action and the evidence establishes the procedural device is appropriate, *not* the merits of the underlying litigation. *Baker*, 167 So.3d at 537, 541; *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

The class action is an exception to the rule that litigation be conducted by and on behalf of the individual named parties only. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); *Price*, 79 So.3d at 966. Thus, the determination of whether a class action meets the requirements imposed by law requires a "rigorous analysis." *Doe v. Southern Gyms, LLC*, 12-1566, 12-1572, 12-1580 (La. 3/19/13), 112 So.3d 822, 829; *Brooks*, 13 So.3d at 554. Such an analysis requires the trial court to "evaluate, quantify, and weigh the relevant factors to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness." *Southern Gyms, LLC*, 112 So.3d at 829 (quoting *McCastle v. Rollins Environmental Services of Louisiana, Inc.*, 456 So.2d 612, 618 (La. 1984). In doing so, the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Dupree v. Lafayette Ins. Co.*, 09-2602 (La. 11/30/10), 51 So.3d 673, 680; *see also Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport*, 309 So.2d 144, 152 (La. 1975).

As a general rule, any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification is *always* subject to modification or decertification if later developments during the course of the trial so require. La. C.C.P. art. 592(A)(3)(d); *Baker*, 167 So.3d at 537; *Defraites v. State Farm Mut. Auto. Ins. Co.*, 03-1081 (La. App. 5 Cir. 1/27/04), 864 So.2d 254, 259, *writ denied*, 04-0460 (La. 3/12/04), 869 So.2d 832. To that end, La. C.C.P. art. 592(A)(3)(d) provides that "[i]n the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall

its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action." Nonetheless, the trial court should evaluate the case closely before certifying the class in light of the consequent burdens of giving notice and additional discovery. *Baker*, 167 So.3d at 537-38; *see also Dupree*, 51 So.3d at 680; *and* Frank L. Maraist, 1 *Louisiana Civil Law Treatise: Civil Procedure*, § 4.12, p. 105 (2d ed. 2008).

### *Class Certification Procedure—La. C.C.P. art. 591*

In Louisiana, the procedure for class certification is governed by Article 591 of the Louisiana Code of Civil Procedure. Article 591(A) provides that a class action must meet five threshold prerequisites, often referred to as numerosity, commonality, typicality, the adequacy of representation, and objective definability of class:

> A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
>> (1) The class is so numerous that joinder of all members is impracticable.
>>
>> (2) There are questions of law and fact common to the class.
>>
>> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>>
>> (4) The representative parties will fairly and adequately protect the interest of the class.
>>
>> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of conclusiveness of any judgment that may be rendered in the case.

Once these five prerequisites have been met, La. C.C.P. art. 591(B) lists three additional criteria, only one of which need be satisfied for certification

depending on the type of class action sought. Under Article 591(B), a trial court

must find that:

> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
>
> > a. Inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class, or
> >
> > b. Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other class members not parties to those adjudications or would substantially impair/impede their ability to protect those interests, or
>
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or
>
> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
>
> > a. The interest of the members of the class in individually controlling the prosecution of defense of separate actions,
> >
> > b. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
> >
> > c. The desirability or undesirability of concentrating the litigation in the particular forum,
> >
> > d. The difficulties likely to be encountered in the management of a class action,
> >
> > e. The practical ability of individual class members to pursue their claims without class certification,

f. The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

La. C.C.P. art. 591(C) cautions that class "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." Nevertheless, where certification is maintained, "the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C). Thus, "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." *Bartlett v. Browning-Ferris Industries Chemical Services, Inc.*, 99-0494 (La. 11/12/99), 759 So.2d 755, 756.

With these legal principles in mind, we now turn to an examination of the pleadings and evidence submitted with the motions to certify the class, in light of the relevant law, to determine whether the trial court properly certified the class herein.

**DISCUSSION**

The burden of proving that the statutory class certification criteria have been satisfied falls on the party seeking to maintain the class action. *Defraites*, 864 So.2d at 259. Therefore, in this case, plaintiffs were required to prove the five prerequisites of La. C.C.P. art. 591(A)(1), namely: numerosity, commonality, typicality, adequacy of the representative, and an objectively definable class. Likewise, plaintiffs were required to prove that common questions of fact or law predominate over individual issues and that the class action procedure is superior to any other method for resolving the controversy fairly and efficiently under La. C.C.P. art. 591(B)(3). *Price*, 79 So.3d at 968.

A review of the trial court's oral reasons for judgment certifying the class exhibits that the court specifically acknowledged that plaintiffs bore the burden of proof, correctly identified the controlling law, acknowledged its duty to perform a "rigorous analysis," addressed each and every element, taking into consideration defendants' opposing arguments, and made individual findings that plaintiffs satisfied their burden for each specific factor. For reasons explained more fully below, we find no manifest error in the trial court's findings, specifically the finding of common factual and legal issues, and in finding that these issues predominate over individual questions. Accordingly, we find no abuse of the trial court's discretion in certifying the class.

*Numerosity*

The first prerequisite to class certification, often referred to as "numerosity," is determined based upon the facts and circumstances of each individual case. *Chiarella v. Sprint Spectrum LP*, 04-1433 (La. App. 4 Cir. 11/17/05), 921 So.2d 106, 119. This requirement reflects the basic function of the class action as a device for allowing a small number of persons to protect or enforce rights or claims for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights or claims at issue in the suit. *Baker*, 167 So.3d at 542. *See also* Kent A. Lambert, "Certification of Class Actions in Louisiana," 58 La.L.Rev. 1085, 1114 (Summer 1998).

There is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law. *Baker*, 167 So.3d at 542. Likewise, the numerosity element may not be met by simply alleging that a large number of potential claimants exist. *Id.* While the determination of numerosity is based in part upon the number of putative class members, it is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of individual claims.

*Id.*; *Chalona*, 3 So.3d at 500-01. Ultimately, to meet this requirement, plaintiffs must show joinder is impractical, but, at the same time, that there is a definable group of aggrieved persons. *Dumas v. Angus Chemical Co.*, 25,632 (La. App. 2 Cir. 3/30/94), 635 So.2d 446, 450, *writ denied*, 94-1120 (La. 6/24/94), 640 So.2d 1349. However, the key is impracticability, and not impossibility of joinder. *Gudo v. Admin. of Tulane Educ. Fund*, 06-1515 (La. App. 4 Cir. 9/5/07), 966 So.2d 1069, 1075, *writs denied*, 07-1959, 07-1992 (La. 1/11/08), 972 So.2d 1170.

Here, the record shows that, according to the data produced by defendants, as of 2018, more than 175,000 NOV recipients have paid fines and are potentially putative members of the class. Clearly, under the facts and circumstances presented by this case, it is neither practicable nor judicially economical for the court to be subjected to a multiplicity of individual claims of relatively nominal value. Pursuant to the Ordinance, the fines imposed and paid per NOV recipient average approximately $150.00. Because each plaintiff's individual claim for recovery falls well below the initial fee for filing a lawsuit, not including other associated litigation costs and attorney fees, it would not be financially feasible or economical for plaintiffs to pursue their claims individually. And, while joinder of so many plaintiffs may not be impossible, in this instance, it would certainly be impractical and judicially inefficient.

Because there is evidence in the record to support a finding that plaintiffs carried their burden of proving the numerosity requirement, we cannot say this finding was manifestly erroneous.

### *Commonality*

The commonality prerequisite requires a party seeking class certification to show that "there are questions of law or fact common to the class." La. C.C.P. art. 591(A)(2). The mere existence of common questions will not satisfy the commonality requirement. *Price*, 79 So.3d at 969. Nonetheless, the test of

commonality is not a demanding one. *Rapp v. Iberia Parish School Bd.*, 05-833 (La. App. 3 Cir. 3/1/06), 926 So.2d 30, 37, *writ denied*, 06-1331 (La. 9/22/06), 937 So.2d 386. It requires only that the class members' claims depend on at least one common contention that is capable of class-wide resolution—one where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Price*, 79 So.3d at 969; *see also Oubre*, 961 So.2d at 510.

The fact that varying degrees of damage may result from the same incident or that class members must individually prove their right to recover does not preclude class certification. *Schexnayder v. Entergy Louisiana, Inc.*, 04-636 (La. App. 5 Cir. 3/29/05), 899 So.2d 107, 118, *writ denied*, 05-1255 (La. 12/9/05), 916 So.2d 1058; *Daniels v. Witco Corp.*, 03-1478 (La. App. 5 Cir. 6/1/04), 877 So.2d 1011, 1014, *writs denied*, 04-2283 (11/19/04), 888 So.2d 204 and 04-2287 (La. 11/19/04), 888 So.2d 205. Additionally, the fact that resolution of class actions may burden and place added responsibilities on the trial court should not be allowed to overcome the fact that a class action meeting all of the requirements will facilitate a prompt, efficient, and relatively inexpensive trial of the common issues as opposed to separate cases. *Schexnaydre*, 899 So.2d at 118.

Fines imposed without due process of law are absolute nullities. *White v. White*, 334 So.2d 1257, 1259 (La. App. 4th Cir. 1981). In order to satisfy due process, there must be a procedure in place that provides a neutral and detached adjudicator that satisfies "the appearance of complete fairness," provides a meaningful opportunity to be heard, and results in a determination based upon the facts and the law. *Allen v. Louisiana State Bd. of Dentistry*, 543 So.2d 908, 914-915 (La. 1989), *as modified on reh'g* (June 29, 1989); *Wilson v. City of New Orleans*, 479 So.2d 891, 901 (La. 1985). Here, plaintiffs contend there are a number of deficiencies in defendants' method of adjudicating citations that render

the Program at issue inadequate by constitutional due process standards: (1) the City acting as a judge in its own case, wherein it awards itself millions of dollars by determining whether it has met its own burden of proof; (2) having the hearing officer perform dual roles as both prosecutor and adjudicator for at least seven years; (3) conducting hearings and imposing fines without evidence; (4) withholding evidence from citation recipients once evidence was actually obtained and relied upon to impose fines; and (5) imposing fines based upon the arbitrary and subjective whims of the hearing officer without reliance on the evidence or law.

In response, defendants argue that commonality is lacking where the claims involve individualized fact questions that cannot be resolved for all class members with common answers. Specifically, defendants contend that each of the plaintiffs' due process claims are too divergent to establish commonality. Defendants argue that in regards to plaintiffs who did not request a hearing, they must weigh each plaintiff's circumstances to determine whether the particular plaintiff has standing, the plaintiff's claim is barred under the voluntary payment doctrine, or that the plaintiff waived due process by choosing not to request a hearing. Defendants further argue that individual consideration of numerous material facts is required for plaintiffs who did request a hearing. In particular, defendants argue that plaintiffs have asserted a generalized lack of due process without demonstrating uniform adherence to a common policy of procedure applicable to every member of the putative class that uniformly deprived them of meaningful notice and an opportunity to be heard.

In addition to the foregoing, plaintiffs also allege that defendants are acting in violation of state law and without authority because they have never obtained DOTD approval for their Program. With regard to state highways, La. R.S. 32:235(C) states that "[n]o local, municipal or parish authority shall place or

maintain any traffic control device upon any state maintained highway without having first obtained written approval of the department."  Moreover, La. R.S. 32:41 states that any local ordinance that will supplement, alter, or change state traffic laws on a state highway must be approved by the DOTD.  Here, defendants have admittedly placed their traffic control devices on state-maintained highways and supplemented state traffic law with their local ordinance without DOTD approval.

Likewise, the Louisiana Highway Regulatory Act provides for the implementation of local traffic enforcement "by means of police officers or by the use of traffic-control devices *approved by the Department*."  La. R.S. 32:41(A)(2).  The Department is defined as the DOTD.  La. R.S. 32:1(14).  Thus, plaintiffs contend that the use of these devices on local streets without DOTD approval is also unlawful and means that the fines are imposed without authority.

Defendants contend that plaintiffs' claims under La. R.S. 32:235 and 32:41 require individualized determinations in order to afford defendants with the opportunity to establish that the equipment capturing the speeding violation at issue was not a traffic-controlled device under La. R.S. 32:235.  According to defendants, individualized determinations are required in regards to whether International Association of Chiefs of Police ("IACP) certified systems were utilized so that defendants can present a defense that each violation was captured by an IACP approved system.  Defendants argue that plaintiffs' claim for violations of La. Const. Art. 6, § 9 hinges on individualized determinations.  In particular, defendants contend their defenses based on the voluntary payment doctrine, natural obligations, waiver, whether due process was afforded under the particular circumstances presented as to each putative plaintiff, and defenses under La. C.C. art. 2299, each require individualized fact determinations that are incapable of class-wide resolution.

After considering the arguments of counsel, the trial court concluded that plaintiffs satisfied their burden of proving the "commonality" requirement based on its finding that the legal questions and/or theories presented are common to each of the class members—*i.e.*, whether the Ordinance violates prohibitory laws and/or Constitutional provisions, and the legality and/or authority of the fines imposed—and that these questions can be resolved as to all of the class members regardless of whether or not they requested a hearing. It ruled that defendants' contention that their purported defenses may preclude a specific plaintiff from recovery to be without merit, giving the example that if the trier of fact finds that defendants' administrative imposition of fines for moving violations is in violation of a prohibitory law and an *ultra vires* act done without authority, then all class members are entitled to a refund.

Contrary to defendants' contention, we find that individualized inquiries into whether or not a plaintiff requested a hearing, whether recovery could be barred under the voluntary payment doctrine, or on the basis that a plaintiff waived his or her due process rights, are irrelevant to answer the question of whether defendants imposed the fines in violation of a prohibitory law. Similarly, the question of whether defendants utilized a system-certified by the IACP, as required by the Ordinance, does not require individual consideration. A review of each individual NOV is unnecessary in order for defendants to determine whether the mobile unit and systems at issue are certified by IACP. Either each of the photo enforcement systems used for the Program were certified by the IACP, or they were not. If they were, then plaintiffs' claim fails on this specific issue.

Additionally, the legal questions and/or theories common to the class members are based upon a common resolution of facts and do not require individualized determinations. For example, each plaintiff in the instant case will have received a NOV and will have paid it, in full or in part, either voluntarily,

after a determination of liability following a hearing, or based upon a finding of "guilty" for failure to appear at a scheduled hearing. As to each plaintiff, defendants will be able to ascertain the total amount of the fine, fee, or penalties that were paid. Redflex will have pursued payment of the NOV after Gretna determined liability. Merely because the facts pertaining to individual NOVs may not be identical does not mean that commonality is lacking. Notwithstanding that plaintiffs may have responded differently to receipt of a NOV (*i.e.*, some may have paid in lieu of a hearing, some may have paid after a determination of liability by a hearing officer, and some may have paid after failing to appear for an administrative hearing), each claim shares a common issue that is central to the validity of all the claims: whether defendants' administrative imposition of fines for moving violations is in violation of a prohibitory law and an *ultra vires* act done without authority.

Because our review of the record shows that it reasonably supports the trial court's findings on the issue of commonality, we do not find the trial court's determination on this issue to be manifestly erroneous.

### *Typicality*

The third prerequisite to class certification is that the claims or defenses of the representative parties consist of a cross-section, or are typical, of the claims or defenses of the class. La. C.C.P. art. 591(A)(3). The test for typicality, like commonality, is not an arduous one. *Conrad v. Lamarque Ford, Inc.*, 08-673 (La. App. 5 Cir. 5/12/09), 13 So.3d 1154, 1165, *writ denied*, 09-1819 (La. 11/6/09), 21 So.3d 310. This requirement determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Baker*, 167 So.3d at 544. A plaintiff's claim is typical if it arises out of the same event, practice, or course of conduct giving rise to the claims of other class

members and those claims are based on the same legal theory. *Gudo*, 966 So.2d at 1078. To satisfy the typicality requirement, plaintiffs need not produce two, or even one, of every kind of claim or of every person included in the class, but rather, must only show that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of all class members. *Id.* at 1079; *see also Davis v. Jazz Casino Co., L.L.C.*, 03-5 (La. App. 4 Cir. 1/14/04), 864 So.2d 880, 889.

Defendants argue that plaintiffs' claims are not typical because the claims (a) focused on different phases of the administrative process, (b) do not arise from the same event, (c) were the result of separate speeding incidents detected by different pieces of equipment deployed at different times and locations, and (d) were subject to hearings administered by different hearing officers. We disagree.

The trial court found that plaintiffs' claims all rise out of the same "course of conduct"—defendants' imposition of fines under the Ordinance—and the majority of those claims are based on the same legal theories and, likewise, are based upon common factual and legal determinations. Because we conclude that there is evidence in the record to support the trial court's finding, we cannot say its determination as to the "typicality" requirement was manifestly erroneous.

### *Adequacy*

The fourth prerequisite to class certification requires plaintiffs to establish whether the representative parties will fairly and adequately protect the interests of the class. La. C.C.P. art. 951(A)(4). The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. *Conrad*, 13 So.3d at 1165. Class representatives can adequately represent absent class members, even though claims by a particular class representative with regard to the exact damages claimed may not be typical, as long as the class of damages asserted by each representative is typical of that of the members of the class. *Husband*, 16 So.3d at

1230; *Andry v. Murphy Oil, U.S.A., Inc.*, 97-0793 (La. App. 4 Cir. 4/1/98), 710 So.2d 1126, 1131, *writ not considered*, 98-1204 (La. 6/19/98), 719 So.2d 473, *writs denied*, 98-1158 (La. 6/19/98), 720 So.2d 1213 and 98-1178 (La. 6/19/98), 720 So.2d 1214.

In *Baker*, *supra*, the Supreme Court held that the following four factors may be relevant for determining adequacy of representation:

> (1) the representative must be able to demonstrate that he or she has suffered an actual vis-à-vis hypothetical injury;
>
> (2) the representatives should possess first-hand knowledge or experience of the conduct at issue in the litigation;
>
> (3) the representative's stake in the litigation—the substantiality of his or her interest in winning the lawsuit—should be significant enough, relative to that of other class members to ensure that representative's conscientious participation in the litigation; and
>
> (4) the representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.

*Baker*, 167 So.3d at 543-44; *Conrad*, 13 So.3d at 1166.

Defendants argue the trial court erred in finding that plaintiffs met their burden of proving adequacy because plaintiffs who paid an NOV for another person or based on contractual obligations do not have any actual injury and cannot adequately represent absent class members because these individuals did not necessarily suffer any injury. According to defendants, some of the plaintiffs do not have first-hand knowledge and experience with respect to a significant portion of the claims and, consequently, cannot adequately represent absent class members. Defendants further contend that plaintiffs' total reliance on, and lack of supervision of, their lead counsel shows that they cannot adequately represent absent class members, and that their lack of conscientious participation and

engagement in the litigation defeats adequacy of representation. Lastly, defendants argue that there are conflicts of interests that defeat adequacy of representation. For example, defendants contend that class counsel, Adam Cossey, is related to one of the class representatives, Judith Triagle, which poses a clear potential conflict with the class, and that class representative, Terrence Cooper, has a divergent interest that does not align with those of the class because he testified that the City's administrative hearings are racially discriminatory. Additionally, class representative, Delores Tortorich, has an individualized defense that has altered the way that she pursues the litigation as a representative.

The trial court found defendants' argument that none of the named plaintiffs are adequate class representatives to be without merit. The trial court determined that all of the named plaintiffs suffered an injury, possess first-hand knowledge of the conduct at issue in the litigation, have a significant stake in the litigation, and do not have any interests that are seriously antagonistic to or in direct conflict with those of other class members. Additionally, the trial court found that Mr. Cossey's relationship to Ms. Traigle did not create a conflict of interest since Ms. Traigle is his aunt-in-law. Furthermore, Ms. Traigle is only one of the eight proposed class representatives and would not be able to make any settlement decisions without concurrence from other class representatives. Lastly, the trial court ruled that it failed to see how Mr. Cooper's belief that the City's administrative hearing and/or hearing officers are racially discriminatory, or Ms. Tortorich's defense at the administrative hearing, would present a conflict of interest. Specifically, plaintiffs have not made claims regarding these issues, therefore, they are irrelevant, and any allegations regarding such are purely speculative. For these reasons, the trial court found that the plaintiffs satisfied the "adequacy or representation" prerequisite.

Our review of the record indicates that all plaintiffs have an interest in the outcome as they all received an NOV, satisfied payment of the NOV giving rise to

this suit, and have testified that they are dedicated to the prosecution of this case. We agree with the trial court's determination of a lack of conflicting interests between the representatives and the putative class members and/or class counsel. In the absence of establishing true conflicting interests or antagonistic claims, we find the trial court did not err or abuse its discretion in determining that the named plaintiffs adequately represent the class.

### *Definability*

The final prerequisite under La. C.C.P. art. 591(A) requires plaintiffs to show the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. *Husband*, 16 So.3d at 1230. The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if she or he is a member of the class. *Id*. The class need not be so clearly defined that every class member can be identified at the commencement of the action, as the trial court *may* modify the class as needed when discovery or the trial adds relevant facts to the record. *Duhe v. Texaco, Inc.*, 99-2002 (La. App. 3 Cir. 2/7/01), 779 So.2d 1070, 1080, *writ denied*, 01-0637 (La. 4/27/01), 791 So.2d 637.

Defendants argue that plaintiffs' stated purpose or class definition does not define an ascertainable class because it will require individualized inquiries into whether class members meet the criteria (*i.e.*, did they pay a fine), or are ultimately able to recover damages. Defendants argue this distinction is material to ascertaining the viability of the class for the following circumstances: (a) where the payor is not the registered owner or the NOV recipient, but paid the NOV in whole or in part, neither the payor nor the NOV recipient fits within the plaintiffs' proposed definition; (b) where the NOV recipient has reimbursed the payor in

whole or in part, the NOV recipient may be a member of the class, but the payor is not; (c) where the names of the NOV recipient and payor are not the same, further inquiry would be necessary to determine whether they are truly different people or if one name is an alias married name, maiden name, generational name, etc.; (d) where the payor and NOV recipient are different people, further inquiry is necessary to determine whether the payor was reimbursed in whole or in part or paid the NOV as a gift. According to Redflex, "where standing cannot be determined for all putative class members at the certification stage without individualized evidence, certification is improper." We disagree.

The "objectively defined" element only requires that there be an objective standard by which the court can determine if a person falls within the class. *Baker*, 167 So.3d at 544. "[T]he mere fact that … class members must individually prove their right to recover does not preclude class certification." *Oubre*, 961 So.2d at 510; *Bartlett*, 759 So.2d at 756. Consequently, "the class need not be so clearly defined that every class member can be identified at the commencement of the action," and "identification of every member of the potential class prior to certification is not required." *Duhe*, 779 So.2d at 1080; *Smith v. Wal-Mart Stores, Inc*, 03-1582 (La. App. 3 Cir. 4/7/04), 870 So.2d 531, 537, *writ denied*, 04-1146 (La. 6/25/04), 876 So.2d 845.

Here, the trial court determined that the proposed class definition easily identifies all eligible class members. The proposed class is limited to only those parties who received an NOV *and* subsequently paid the civil penalty. Thus, to qualify for the class and have standing, a party must have paid a fine in response to receipt of an NOV. We find the proposed class is sufficiently defined in order to give potential class members enough information to determine whether they are included within the class and to enable potential class members to opt out of the class. The possibility that some persons may fail to prevail on their individual

claims will not defeat class membership. *Conrad*, 13 So.3d at 1165. There is evidentiary support in the record for the trial court's finding that the proposed class representatives will adequately represent the interests of the class, and the record as a whole does not indicate that this finding was manifestly erroneous.

Accordingly, based on the foregoing, we find plaintiffs have fulfilled the statutory requirements of La. C.C.P. art. 591(A). We must now determine whether at least one of the requirements of La. C.C.P. art. 591(B) has been met.

### *La. C.C.P. art. 591(B)*

The second level of analysis for determining whether to certify a class action is governed by La. C.C.P. art. 591(B). As stated, a court reaches this level of analysis only if it finds that all the requirements of La. C.C.P. art. 591(A) have been satisfied. Only one of the requirements of Section (B) must be met. *See Defraites*, *supra*, 864 So.2d at 259. In this case, the trial court found that plaintiffs satisfied La. C.C.P. art. 591(B)(3), which requires the court to find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods of adjudicating the controversy. Here, after considering the evidence submitted and the legal theories asserted in this case, the trial court reasoned that common questions predominate over questions affecting individual members. The trial court also determined that it would be impracticable for individuals to pursue their claims without class certification because of the nominal monetary relief for each individual, and that the class action procedure is superior to other available methods for the fair and efficient adjudication of the controversy given the nominal monetary relief sought.

### *Predominance*

The legislature has specifically provided, emphasizing the commonality and predominance requirements, that class "[c]ertification shall not be for the purpose

of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C); *see also Ford*, *supra*, 703 So.2d at 549. Nevertheless, where certification is maintained, "the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C). The latter provision recognizes that "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." *Bartlett*, *supra*, 759 So.2d at 756 (citing *McCastle*, 456 So.2d at 620). The paramount concern is whether the class action procedure "would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Daniels*, *supra*, 877 So.2d at 1015.

The Louisiana Supreme Court has explained that the predominance requirement is more demanding than the commonality requirement, because it "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class," a process that ultimately "prevents the class from degenerating into a series of individual trials." *See Dupree*, *supra*, 51 So.3d at 683; *Brooks*, *supra*, 13 So.3d at 553. In short, the predominance requirement tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.

The overriding common issue that predominates in the instant case, and upon which all plaintiffs' claims are founded, is the constitutionality and legality of the Program—whether the traffic Program violates prohibitory laws and/or the Louisiana Constitution, and whether the resulting fines imposed are without authority and, thus, constitute an *ultra vires* act. Once the factfinder resolves this

common, substantive issue, which is based upon the same set of operative facts, liability and causation for all class members is decided and will control—class-wide—whether the litigation ceases or whether it proceeds to a determination of the remedies sought, which are declaratory relief (regarding the Program's legality), injunctive relief (prohibiting continued operation of the Program), and damages (return of civil penalties). If the court resolves this single, paramount issue in favor of defendants, the litigation ceases. If the court resolves this paramount issue in favor of plaintiffs, the remaining issues individual to class members relate to any defenses defendants may assert and the calculation of damages, which consist mainly of the amount of the fine, fees and penalties a NOV recipient paid.[8]   Because a determination of this substantive issue will dispose of all of plaintiffs' claims one way or another, it predominates over any individual issues that may be presented by the particular circumstances surrounding the claim of any individual class member.

The gravamen of Redflex's argument that individual issues predominate making class certification improper is that its affirmative defenses of the voluntary payment doctrine, waiver, and natural obligation doctrine, depend on individual facts and circumstances. While affirmative defenses should be considered when making class certification decisions, the potential complication is not enough to decertify the class. *Doe v. Jo Ellen Smith Medical Foundation*, 12-966 (La. App. 4 Cir. 4/24/13), 115 So.3d 655, 663, *writ denied*, 13-1197 (La. 9/13/13), 120 So.3d 699; *Mathews v. Hixon Bros., Inc.*, 02-124 (La. App. 3 Cir. 7/31/02), 831 So.2d 995, 1000, *writs denied*, 02-2286, 02-2305 (La. 12/13/02), 831 So.2d 984. Moreover, while Redflex's affirmative defenses may limit or bar a class member's ultimate recovery, they will not affect the initial determination of whether the

---

[8]     The same records and computer program Redflex uses to track the status of NOVs would likely be the predicate for the calculation of damages to individual class members.

Program violates prohibitory laws and/or Constitutional provisions and whether the associated fines were illegally imposed. As such, while Redflex's defenses apply to the issue of plaintiff's damages, they do not apply to defendant's liability, and do not make class certification inappropriate under La. C.C.P. art. 591(C), which provides, in pertinent part, that where class certification is maintained, "the court shall retain jurisdiction over … *defenses* dependent for their resolution on proof individual to a member of the class." [Emphasis supplied.] *See Sutton Steel & Supply, Inc. v. BellSouth Mobility*, 03-1536 (La. App. 3 Cir. 6/9/04), 875 So.2d 1062, 1070.

Here, the trial court determined that Redflex's potential defenses were not enough to defeat class certification and that common issues predominate. Keeping in mind La. C.C.P. art. 591(C), and considering La. C.C.P. art. 592(3)(d), which states that "[i]n the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action [,]" we find no abuse of the trial court's discretion in finding that common issues in this matter predominate over individual issues.

### *Superiority*

In addition to the predominance requirement, plaintiffs must also show that the class action procedure is superior to other available methods for the fair and efficient adjudication of plaintiffs' claims. *Dupree*, 51 So.3d at. 699. The trial court must evaluate, quantify, and weigh the relevant factors to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. *Id*. at 699-700. The basic goal or aim of any procedural device is "to implement the substantive law, and to implement that law in a manner which will provide

maximum fairness to all parties with a minimum expenditure of judicial effort." *Id*. at 700 (citing *Stevens*, *supra*, 309 So.2d at 151. If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether some other procedural device would better serve these goals. *Chiarella*, *supra*, 921 So.2d at 120.

Here, the trial court determined that the class action procedure is superior to other available methods given the modest monetary relief sought in relation to the costs associated with bringing individual lawsuits. Redflex argues the trial court erred in placing too much emphasis on the supposed impracticality of claimants pursuing individual claims as that is only one factor in assessing superiority of a class action to individual trials, which does not trump the requirement that common issues predominate over individual issues. Redflex posits that the difficulties of managing a class action that devolves into a series of mini trials to address issues such as intent, knowledge, standing, or liability will always outweigh the efficiencies of the class action mechanism. Redflex asserts that in finding that the class action procedure is the superior method for adjudicating the controversy, the trial court completely ignored and essentially deprived Redflex of its affirmative defenses, which it contends are particularized to each plaintiff and require individualized inquiries. Consequently, by certifying the class, Redflex avers the trial court manifestly erred and abused its discretion by failing to fulfill its obligations under La. C.C.P. art. 591(3). In light of our review of the record, we disagree.

In the instant case, each plaintiff's claim involves an allegation that defendants violated prohibitory laws and/or Constitutional provisions and that civil penalties were unlawfully imposed. There is no indication that consideration of the substantive constitutionality issue, common to all plaintiffs, would require individual trials or be unduly burdensome to the trial court. To the contrary, the

record shows there is little proof on liability or causation necessary in this case individual to each plaintiff. Their claims do not require highly individualized inquiries into the cause of the damages. Moreover, trying all of the plaintiffs' claims separately could result in non-uniformity in the application of the law on these issues and in consideration of defendants' anticipated defenses.

Additionally, taking into consideration the nominal value of plaintiffs' individual claims, requiring them to proceed by individual trials could disenfranchise large numbers of affected persons from the legal system. The record evidence suggests that in each case herein, the costs associated with bringing separate liability suits will clearly exceed the value of any individual plaintiff's claim, rendering individual actions financially impractical, if not impossible. Considering the circumstances of this case, and that the ultimate goal of the class action procedure is to efficiently and fairly ensure that the substantive law underlying the plaintiffs' claims is effectuated, we find the trial judge carefully balanced considerations of procedural fairness with judicial efficiency in concluding that a class action is the superior procedural device in this matter.

Considering the record before us, we find the trial court exercised its vast discretion and did not err in concluding that a class action is superior to other available methods for the fair and efficient adjudication of this matter.

**MISCELLANEOUS ISSUES**

### *"Rigorous Analysis"*

In its brief, Gretna contends the trial judge failed to perform the requisite "rigorous analysis" in certifying the class. We disagree.

The "rigorous analysis" a trial court must employ under *Brooks, Dupree, and McCastle*, *supra*, in determining whether or not class certification is appropriate in a particular case *does not*, as Gretna proposes, require that the trial court conduct "a rigorous analysis involving the application of facts to the six (6)

prohibitory laws and two (2) Constitutional provisions," an analysis that necessarily involves consideration of the merits of plaintiffs' claims.[9] In this regard, Gretna erroneously avers the trial court applied an incorrect legal analysis, and that class certification is improper because plaintiffs failed to carry their burden of proving their claims were "viable," by presenting sufficient evidence that they will succeed on the merits.

Gretna's arguments are misplaced and legally incorrect. The "rigorous analysis" mandated by the Louisiana Supreme Court requires a trial court to "evaluate, quantify, and weigh" each of the relevant factors set forth in La. C.C.P. arts. 591(A) and 591(B)—numerosity, typicality, commonality, adequacy of representation, definability, predominance and superiority—to determine if the class action procedure would be judicially efficient and result in individual fairness. As previously stated, whether plaintiffs' claims have substantive merit or whether plaintiffs can show that they will ultimately prevail on the merits are not proper considerations in determining whether class certification is proper. *See Oubre*, 961 So.2d at 509.

### *Failure to Consider All Relevant Evidence*

Gretna also proposes the trial court abdicated its duty by adopting plaintiffs' arguments *carte blanche* in lieu of considering the necessary factors, and prematurely ruled from the bench prior to having and considering all of the relevant evidence. Specifically, Gretna contends the trial court failed to consider certain exhibits, including the complete errata sheet for the deposition of Redflex's

---

[9] Gretna erroneously asserts that when ruling on plaintiffs' class certification motion, the trial court made a determination as to a host of material issues of fact; *i.e.*, that the Ordinance violates prohibitory laws and Constitutional provisions. A review of the trial court's judgment and exhaustive oral reasons for judgment defies such a conclusion. To the contrary, the trial court made no ruling as to the merits or viability of plaintiffs' claims. Instead, the trial court determined that the issues raised are common to all plaintiffs and are capable of class-wide resolution. Put simply, whether or not plaintiffs prevail on their claims that the Ordinance violates prohibitory laws and/or Constitutional provisions will resolve class-wide whether the litigation ceases or whether it proceeds to a determination of damages, declaratory relief and/or injunctive relief.

corporate representative, Kirk Best. According to Gretna, the trial court only considered the particular pages provided by plaintiffs. Additionally, Gretna argues the trial court did not have a complete set of Redflex's "status change" records (which consists of computer entries Redflex makes when the status of a NOV is changed; *i.e.*, found guilty, not guilty, failure to appear, etc.), but rather, had only the example pages plaintiffs attached to their reply brief.

A review of the transcript from the class certification hearing, however, evidences that these "complete" exhibits were received by the court at the outset of the hearing and were made available prior to its ruling. Additionally, based on our review, we do not believe the supplementation of the "complete" exhibits at issue has any substantive bearing on the class certification issues, or otherwise would have altered in any way the trial court's analysis and ultimate conclusion that plaintiffs bore their burden of proving class certification is warranted in this case.

### *Requirements of La. C.C.P. arts. 591(B)(1) or 591(B)(2)*

Redflex argues the trial court erred and abused its discretion in concluding that it was "not necessary for the Court to comment on (B)(1) and (B)(2)" after erroneously finding that the requirements of La. C.C.P. art. 591(B)(3) had been satisfied, instead "adopt[ing] the [conflicting] arguments that were made by counsel." Having already determined that the trial court did not err in finding that plaintiffs satisfied their burden of establishing the predominance and superiority requirements of La. C.C.P. art. 591(B)(3), we find the trial court was not obligated to consider La. C.C.P. arts. 591(B)(1) or 591(B)(2). This assignment of error is without merit.

### *Trial Court's Ruling From the Bench*

Redflex also contends it was error for the trial court to issue its ruling and detailed oral reasons from the bench at the close of the certification hearing instead

of taking the matter under advisement. We find that defendant's contention lacks merit.

The voluminous record in this case evidences its long five-year procedural history and the fact that the parties had previously been before the trial court—as well as this Court and the Louisiana Supreme Court—on numerous occasions, for exceptions, motions for summary judgment, a motion for preliminary injunction, and discovery matters. Additionally, the arguments of the parties were well-briefed, and the trial court was admittedly well-prepared on the class certification issue, in advance of the hearing. Under the circumstances, we find no error in the trial court's ruling from the bench.

Based on our review of the record in its totality, we find that it is clear that the trial court correctly identified the controlling law and considered each of the elements set forth in La. C.C.P. arts. 591(A) and 591(B) in relation to the legal arguments made by both plaintiffs and defendants. We further find that, having employed the requisite rigorous analysis, the trial court correctly determined that plaintiffs carried their burden of proving that the class action procedure would promote the goals of effectuating substantive law, judicial efficiency, and individual fairness in this case.

## CONCLUSION

The trial court found that plaintiffs satisfied all of the requirements of La. C.C.P. art. 591(A), and the requirements of La. C.C.P. art. 591(B)(3). A trial court has vast discretion regarding class certification. *Baker*, 167 So.3d at 538; *Oubre*, 961 So.2d at 508. We find no manifest error in the trial court's findings and no abuse of discretion in the trial court's determination that this matter meets all of the requirements of La. C.C.P. art. 591 for certification as a class action. Thus, the trial court's judgment granting plaintiffs' motion for class certification is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 5, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

# 21-CA-574

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)

| | | |
|---|---|---|
| G. ADAM COSSEY (APPELLEE) | CHRISTIAN W. HELMKE (APPELLANT) | E. JOHN LITCHFIELD (APPELLANT) |
| LEONARD L. LEVENSON (APPELLANT) | MICHAEL J. MARSIGLIA (APPELLANT) | ALLEN C. MILLER, SR. (APPELLANT) |
| EMILY OLIVIER KESLER (APPELLANT) | KENT A. LAMBERT (APPELLANT) | KIM M. BOYLE (APPELLANT) |
| LEOPOLDO J. YANEZ (APPELLANT) | NANCY S. DEGAN (APPELLANT) | |

## MAILED

| | | |
|---|---|---|
| GORDON L. JAMES (APPELLEE) | DANIEL P. QUIGLEY (APPELLANT) | COLLEEN B. GANNON (APPELLANT) |
| MARGARET H. PRUITT (APPELLEE) | STACEY F. GOTTLIEB (APPELLANT) | DONNA R. BARRIOS (APPELLANT) |
| ROBERT M. BALDWIN (APPELLEE) | 2425 EAST CAMELBACK ROAD | ATTORNEYS AT LAW |
| ATTORNEYS AT LAW | SUITE 1100 | 650 POYDRAS STREET |
| 1800 HUDSON LANE | PHEONIX, AZ 85016 | SUITE 2750 |
| SUITE 300 | | NEW ORLEANS, LA 70130 |
| MONROE, LA 71201 | | |